[Civ. No. 2602.   Second Appellate District.—November 12, 1918.]

MARIAN O. HOOKER, as Executrix, etc., Appellant, v. EAST RIVERSIDE IRRIGATION DISTRICT (a Corporation), et al., Respondents.

IRRIGATION DISTRICT BONDS—ACTION BY ASSIGNEE TO RECOVER AMOUNT —PLEADING—FORMER ADJUDICATION OF INVALIDITY—DEMURRER.— A complaint in an action by the assignee of irrigation district bonds to recover the amount thereof, which sets forth in effect, among other allegations, that in a previous action by the plaintiff's assignor for the amount then due and unpaid thereon, a federal court, having jurisdiction of the person of the plaintiff and of the subject matter in such previous action, had rendered judgment adjudging each and all said bonds invalid and void, does not state a cause of action.

ID.—JUDGMENT—COLLATERAL ATTACK.—A judgment duly rendered by a court having jurisdiction both of the person and subject matter cannot be collaterally attacked merely by a showing that some of the evidence which might have been produced by the plaintiff in support of the issues as framed was not so produced.

ID.—REFORMATION OF BONDS—STATUTE OF LIMITATIONS—INSUFFICIENCY OF COMPLAINT.—A cause of action for the reformation of irrigation district bonds on the ground of mutual mistake of the parties comes under the three years statute of limitations (subdivision 4 of section 338 of the Code of Civil Procedure); such cause of action is not deemed to have accrued until the discovery of the facts constituting the mistake, and unless there is a direct allegation of the discovery of the facts alleged to constitute such mistake within three years of the commencement of the action, a demurrer to a complaint attempting to state such a cause of action is properly sustained.

ID.—MUNICIPAL CORPORATIONS—PROPERTY ACQUIRED IN EXCHANGE FOR VOID BONDS—ACTION TO RECOVER PROPERTY OR REASONABLE VALUE

—ACCRUAL OF CAUSE OF ACTION.—A cause of action against a
municipal corporation to recover property which it has acquired in
exchange for void bonds, or to recover the face value of the bonds
as the reasonable value of the property so acquired, accrues at the
time the bonds are delivered, and falls within the limitation pro-
vided by subdivision 1 of section 339 of the Code of Civil Procedure.

ID.—ASSIGNMENT OF CAUSE OF ACTION.—The right of action in such
case to recover the value of the bonds in case of their nonpayment
passes to an assignee of the bonds as an incident of their ownership.

APPEAL from a judgment of the Superior Court of San
Bernardino County. Frank F. Oster, Judge Presiding.

The facts are stated in the opinion of the court.

Lent & Humphrey, for Appellant.

Henry C. Goodcell and Goodcell & Goodcell, for Re-
spondents.

MYERS, J., *pro tem.*—The plaintiff appeals from a judg-
ment of the superior court entered upon an order sustaining
defendant's demurrer to her amended and supplemental com-
plaint (hereinafter referred to as "the complaint") without
leave to amend. The demurrer is both general and special,
the latter presenting numerous grounds, of which we deem it
necessary to consider here only those which plead the statute
of limitations. All of the special statutes of limitation which
may be appropriate thereto are pleaded by the demurrer to
any and every cause of action alleged in the complaint.

From the allegations of the complaint the following facts
appear: The defendant and respondent East Riverside Irri-
gation District is a municipal corporation duly organized and
existing under the provisions of the "Wright Act," [Stats.
1887, p. 29], and in 1890 had duly taken all of the steps
necessary under the act for the creation of a bonded indebted-
ness in the sum of two hundred and fifty thousand dollars.
Thereupon its board of directors instituted in the superior
court of San Bernardino County, wherein it was situate, an
action *in rem* pursuant to an amendment to said act, wherein,
in December, 1891, a decree was entered confirming the pro-
ceedings theretofore taken in the organization of the district
and authorization of said bond issue, and adjudging that the
district "at the date of said decree was a duly and legally

organized irrigation district, possessing full power and authority to issue and sell from time to time the bonds of said district in the sum of two hundred and fifty thousand dollars, and that the bonds of said district theretofore issued in said sum were legal and valid." (It is manifest that the word "issued" as used in said decree, as well as in said act, is used in the sense of "authorized," rather than in the sense of "executed." (*Wright* v. *East Riverside Irr. Dist.*, 138 Fed. 313, 323, [70 C. C. A. 603].) The bonds here in question were not executed until more than a year thereafter.)

Thereafter, in January, 1892, the district entered into a contract with appellant's testator, J. D. Hooker, whereby Hooker agreed to furnish and deliver a completed and constructed pipe-line, four thousand feet in length, more or less, to be connected and laid in trenches and to form a part of the irrigation works and system, at the agreed price of $2.50 per lineal foot, payable one-half in cash and one-half in such bonds at their par value. Hooker duly performed this contract and there became due thereon the sum of $20,642.94, instead of the ten thousand dollars originally contemplated. Whereupon, at the request of the district, Hooker agreed to accept five thousand dollars in cash in lieu of one-half cash, and also agreed to accept, "as a medium of payment" of the balance, bonds at par value. These bonds were then executed and delivered to Hooker and the five thousand dollars paid to him on January 27, 1892, pursuant to a resolution of the board of directors. The bonds as then issued bore the signature of W. R. McCully, who was then secretary of said district, whereas the interest coupons thereto attached bore the engraved signature of J. A. Van Arsdale as secretary, Van Arsdale having been secretary at the time the bonds were authorized and at the time the bonds and attached coupons were engraved, at which time his engraved signature was appended to the coupons pursuant to a resolution of the board.

In the latter part of 1892 Hooker sold and delivered the bonds for a valuable consideration to C. G. Hooker, warranting them good and valid and agreeing to take them back if they should prove otherwise. Thereafter, prior to June 29, 1901, C. G. Hooker sold and transferred them for a valuable consideration to C. O. Hooker and Robert G. Hooker, and C. O. Hooker and Robert G. Hooker then sold and delivered

them for a valuable consideration to R. Percy Wright; all of these sales being under the same warranty.

The interest coupons were duly paid at maturity, up to and including January 1, 1897, since which time no further payments have been made thereon, or upon the principal, which was payable in installments. Wright presented for payment the interest coupons then due, and payment was refused. Thereafter, and on June 29, 1901, Wright (a citizen of the British empire) commenced an action at law in the United States circuit court in and for the southern district of California, against said East Riverside Irrigation District to recover judgment for the amount then due and unpaid upon said coupons. Said defendant appeared and filed its answer, alleging that said bonds and the coupons attached thereto were null and void, specifying, among other defects, the following: That on June 27, 1892, Van Arsdale, whose name appears upon the coupons, was not the secretary of said district, and that McCully, whose name appeared upon the bonds themselves, was not the secretary at the date appearing upon the bonds, to wit, December 30, 1890. Thereafter, on May 16, 1904, judgment was entered in said action, adjudging each and all of said bonds invalid and void for the reason above specified. Thereafter the plaintiff, Wright, was allowed a writ of error from the United States circuit court of appeals, which resulted, May 29, 1905, in a decision by the latter court affirming the judgment. Thereafter a petition for a writ of *certiorari* to review said decision was presented to the United States supreme court and denied on January 29, 1906.

Pursuant to the covenants of warranty, the bonds were retransferred by mesne assignments from Wright back to J. D. Hooker, who again became the owner thereof on or about June 15, 1909. He then again demanded payment of the interest and principal installments then due, which was refused; whereupon he demanded payment of the sum of $15,642.94, the amount remaining unpaid under the original contract, or the return of said pipe-line, which demand was also refused. Thereupon he demanded that the directors of the district cause the property therein to be assessed for taxes to provide funds for the payment of the amounts due, which was refused; whereupon he commenced this action June 29, 1909.

The complaint presents several different aspects which are illustrated by the prayer, which is as follows: First. That the bonds be adjudged valid and the plaintiff have judgment for the amount due thereon. Second. In the event they be held not valid, that they be reformed so as to become enforceable obligations and that plaintiff have judgment for the amount due thereon as so reformed. Third. In the event they be held invalid and not susceptible of reformation so as to render them valid, that they be held valid and enforceable promissory notes or obligations of defendant district, and that plaintiff have judgment for the amounts due thereon. Fourth. In the event that the three former prayers be denied, that the obligation of the original pipe-line contract be held to have been suspended by the issuance of the bonds as conditional payment thereof, and that plaintiff have judgment for the amount due under said original contract, with interest. Fifth. That any judgment awarded be decreed to be a lien upon the real property within the district.

Much is said in the briefs concerning the "ethics" and "natural justice" of plaintiff's claim. It is obvious, we think, that the question presented to this court for determination is whether or not, under the facts alleged in the complaint, plaintiff is entitled in this action to the relief sought, or to any relief, with reference, not to the principles of ethics or natural justice, but rather to the established rules of law and equity jurisprudence.

Considering the complaint in the aspect first presented, that of an action upon the bonds as valid obligations, it does not state a cause of action, in that it appears therefrom that the plaintiff is conclusively estopped by the judgment of the federal court holding them void. Plaintiff attempts to escape from this situation by alleging in her complaint that in the action in the federal court the question of an estoppel arising by reason of the payment of the first interest coupons was not raised or considered; nor was the decree validating said bonds set up; nor was the question of the adoption of the litho-graphed signature of Van Arsdale, as the signature of the then secretary, set up.

It is manifest, we think, that a judgment duly rendered by a court having jurisdiction, both of the persons and the subject matter, cannot be collaterally attacked merely by a showing that some of the evidence which might have been pro-

duced by the plaintiff in support of the issues as framed was not so produced. Conceding for the moment, but not deciding, that the question of the conclusive effect of the judgment of the superior court holding the bonds valid in the action *in rem* is not concluded by the judgment of the federal court because that judgment was not pleaded therein, it is apparent that such judgment could not determine the validity of the manner and mode of the attempted *execution* of the bonds, which was not attempted until a year and a half subsequent thereto.

Appellant also contends that she is not concluded by the judgment of the federal court because J. D. Hooker was not a party thereto. There is no merit in this contention. Hooker brought this action as the successor in interest of Wright, who, as the then owner of these bonds, was plaintiff in the federal action. The claim is nowhere made that Hooker was without notice of any of the steps or proceedings in the federal court. (Code Civ. Proc., sec. 1908, subd. 2.)

Considering the complaint in its second aspect, counsel for respondents argue with much force that plaintiff is not entitled in any event to a reformation of the bonds because the original contract pursuant to which they were issued was invalid. Their contention is that this was a contract for the *construction* of a pipe-line, rather than a contract for a *sale* and purchase of property, and that, therefore, the district had no authority under the law to issue bonds in payment therefor, as held in *Hughson* v. *Crane*, 115 Cal. 404, [47 Pac. 120], and later cases. Their contention finds much support in the facts alleged in the complaint, but it is not necessary to decide that question here.

The action in this aspect is for a reformation of the bonds on the ground of mutual mistake of the parties, it being alleged that both parties to the contract believed and understood at the time of their delivery that they were valid. This cause of action comes under the three-year statute of limitations and is not deemed to have accrued until the discovery of the facts constituting the mistake. (Code Civ. Proc., sec. 338, subd. 4.) There is no direct allegation in the complaint of the discovery of the facts alleged to constitute the mistake at any time within three years of the commencement of the action, and the demurrer might well be rested on that ground alone. The federal court held, as alleged here,

that the invalidity of the bonds was apparent on their face. The district refused payment of interest upon the ground of such invalidity at some time prior to June 29, 1901.    The federal circuit court adjudged the bonds invalid May 16, 1904, which judgment was affirmed by the circuit court of appeals May 29, 1905.    This latter decision was final, there being no federal question involved in that case.    Taking the view most favorable to the appellant, it must be held that then, at the latest, the then owner of the bonds "discovered" the facts constituting the alleged mistake.    His action for relief on the ground of mistake having accrued, at least as early as May 29, 1905, the running of the statute could not be interrupted by the transfer of the bonds to his assignee (his former assignor).    This action was not commenced until June 29, 1909, more than four years thereafter.

In the third aspect of the complaint plaintiff appeals to the rule of law that where a municipal corporation has obtained property which it had the power and right to acquire and has given in exchange therefor bonds or other securities which are void, the duty then arises to return the property or pay the reasonable value thereof (which is alleged in this case to be the same as the face value of the bonds).    This rule is recognized in the case of *Higgins* v. *San Diego Water Co.,* 118 Cal. 525, 555, [45 Pac. 824, 50 Pac. 670].

Whether such duty be regarded as resting upon an implied contract or upon an obligation created by law, in either case it falls within the provisions of section 339 of the Code of Civil Procedure, subdivision 1; and whether it be held that this right of action accrued at the time the bonds were delivered, which were void upon their face, or that it did not accrue until final judgment of the circuit court of appeals, the result is the same in either case and the action is barred.    Appellant seeks in various ways to escape this result.    It is alleged that when Hooker sold the bonds he did not transfer his right or claim to recover value in case the bonds were not paid, and that this right of action always remained in him.    This is an allegation of a conclusion of law and is negatived by the rule of law that in such case such right of action passes to an assignee of the bonds as an incident to their ownership. (*Parkersburg* v. *Brown,* 106 U. S. 487, 503, [27 L. Ed. 238, 1 Sup. Ct. Rep. 442]; *Goldman* v. *Murray,* 164 Cal. 419, 422,

[129 Pac. 462].) And even if this were not the case, it could scarcely be held that the holder of a right of action could suspend the running of the statute by splitting his right of action and transferring a portion thereof to another. Except in the case of certain statutory exceptions, a statute of limitations runs against the right of action, not against the holder thereof. It is also argued that the running of the statute was suspended during the litigation in the federal courts. There is no merit in this contention, and the cases cited in support of it are not in point here.

The complaint in its fourth aspect proceeds upon the theory that the bonds were not taken in *payment,* but were accepted only as a "*medium* of payment," and therefore operated only to suspend the time of payment until the maturity of the bonds. It might well be said that this contention is negatived by the allegations of the complaint, from which the following facts appear: The contract itself provided for *payment* in bonds; the resolution of the board of directors, which was the only authority for the issuance of the bonds, provided for their issuance in *payment* of the obligation. Plaintiff brings this action as the owner and holder of the bonds, alleging them to be valid obligations, after having made an absolute sale of them and afterwards received them back under the warranty. Furthermore, the district, under the Wright Act, had no power or authority to issue the bonds except in *payment* for property purchased.

But if it be assumed that the bonds were not accepted by Hooker as a payment, but merely as evidence of the obligation for the purpose of extending the time of payment thereof, the result would be to extend such time of payment only until a default be made in the payment of the bonds. (*Griffith* v. *Grogan,* 12 Cal. 317, 322; *Crawford* v. *Roberts,* 50 Cal. 235; *Crary* v. *Bowers,* 20 Cal. 85, 89; *Gnarini* v. *Swiss-American Bank,* 162 Cal. 181, 184, [121 Pac. 726].) Just when default was first made does not definitely appear, but in any event it was prior to June 29, 1901, so that the action, in this respect, is clearly barred.

No claim is here made that plaintiff could, consistently with the facts, have stated any better cause of action if the lower court had granted leave to amend. Other contentions which have been argued in appellant's brief and are not here dis-

cussed have been considered and are deemed to be without merit.

For the reasons above set forth, the judgment is affirmed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 9, 1919.

Angellotti, C. J., Sloss, J., Melvin, J., ·Lawlor, J., and Lennon, J., concurred.