## DAN NICHOLAS v. SALISBURY HARDWARE AND FURNITURE CO.

(Filed 4 June, 1958.)

**1. Dedication § 2—**

Intent is essential to the dedication of land to the public by the owner, and while such intent may be inferred from the circumstances without a formal act of dedication, such circumstances must be unmistakable in their purpose and decisive in their character, and mere use by the public of the land for ingress and egress has no tendency to establish a dedication.

**2. Same— Evidence held insufficient to show dedication of alley to the public.**

The evidence tended to show that an alley owned by plaintiff had been used by the public generally for a period of over thirty years for ingress and egress and that the city worked the alley so that trucks could get in and out, but also that the receiver for plaintiff's predecessor in title sold the adjacent land subject to an easement in the land in question in favor of named persons, that the city sued plaintiff for *ad valorem* taxes on the alley and that plaintiff paid the taxes to the city and county thereon, and that when plaintiff advised the city not to use the land except for the police and fire departments, the city stopped all other uses until permission for such other uses was granted. *Held:* The evidence is insufficient to show a dedication of the alley to the public.

**3. Easements § 3—**

A party asserting an easement by prescription has the burden of proving all the elements essential to its acquisition, including that his use of the easement was continuous and uninterrupted for twenty years and was adverse or under claim of right, and a permissive use of another's land cannot ripen into an easement by prescription regardless of length of time.

**4. Same—**

Use of another's land will be presumed permissive until the contrary is shown.

**5. Limitation of Actions § 7—**

When a statute of limitations has begun to run, no subsequent disability will stop it, and ordinarily the mere appointment of a receiver will not toll the statute unless the circumstances are such that such appointment precludes the institution of suit.

**6. Same—**

Where a receiver has full authority to institute suit, his appointment will not suspend the running of the statute of limitations against the estate. G.S. 1-507.2, G.S. 55-148.

**7. Easements § 3—**

Defendant's evidence tended to show the open and notorious use of an alleyway for a period of more than thirty years except for a short time

when a sewer was laid, that such use was begun prior to the appointment of a receiver for plaintiff's predecessor in title and had been continuous up until the institution of this action to remove the cloud on title, in which plaintiff averred that defendant claimed an estate or interest in the land adverse to plaintiff. *Held:* The evidence is sufficient to be submitted to the jury on the question whether defendant acquired a right of way over the land by prescription.

JOHNSON, J., concurring in part and dissenting in part.

RODMAN, J., dissenting.

BOBBITT, J., concurs in dissent.

APPEAL by defendant from *Rousseau, J.,* September 1957 Term of ROWAN.

Statutory action to quiet title to a strip of land fronting 10 feet on Church Street, Salisbury, North Carolina, and extending back between parallel lines for a depth of 200 feet.

The complaint alleges that plaintiff is the owner in fee and in possession of this strip of land, which is described by metes and bounds, and that the defendant asserts a claim adverse to his interest of an easement over this land for purposes of ingress and egress to its adjacent property, which constitutes a cloud upon his title. Wherefore, plaintiff prays that he be declared the owner in fee of this land, free from any claim of the defendant.

The defendant in its answer denies that plaintiff is the owner in fee and in possession of this land, and asserts that plaintiff has merely described in his complaint "one of Salisbury's most established public alleys." For a further answer the defendant pleads two defenses. One, a dedication of this land by its owners to the public at large, and an acceptance of the dedication by the public generally, and the city of Salisbury, which kept up the alley and subsequently paved it. Two, if this strip of land be declared not a public alley, then the defendant has acquired by prescription an easement for purposes of ingress and egress over it by a continuous adverse user for more than 20 years.

Plaintiff's evidence tends to show the following facts: In 1920 W. F. Snider was living in a residence on a large lot owned by his wife and himself on the corner of West Innes and Church Streets in the city of Salisbury. The lot extended back about 200 feet to a warehouse of the defendant that was there at that time. There was no alley on this lot at the time. There was no way to enter the lot from the corner of Innes Street down to the defendant's warehouse on Church Street. Sometime after 1920 different parties bought the lot and houses, cleared off the houses, and subdivided the lot. The alley was placed on the lot after the Sniders sold it.

On 1 April 1922 W. F. Snider and wife conveyed to Frank R. Brown by deed properly recorded on 4 May 1922 a part of their lot. The lot conveyed to Brown fronted 76.5 feet on Church Street, and part of its description is as follows: "Thence with Church Street South 47 deg. 45 min. West 76.5 feet to a stake in line of Church Street, corner Salisbury Hardware and Furniture Company (the defendant); thence with line of Salisbury Hardware and Furniture Company South 42 deg. 45 min. East 200 feet to a stake." The description of the lot conveyed to Brown embraces the strip of land, which is the subject of this action.

On 18 April 1922 Marie E. Kenerly and her husband by deed, properly recorded on 20 April 1922, conveyed to Frank R. Brown lot 8 of the W. F. Snider property, which fronted 17.5 feet on Church Street, and adjoined on its East side the lot Brown had purchased from the Sniders.

On 6 September 1924 Frank R. Brown and his wife by deed, properly recorded on 9 September 1924, conveyed these two lots to Brown Insurance & Realty Company.

At the September 1926 Term of the Superior Court of Rowan County, in the case of *Sam Carter et al. v. Perpetual Building & Loan Association, Brown Insurance & Realty Company et al.,* P. S. Carlton was appointed permanent Receiver of the Brown Insurance & Realty Company.

By virtue of an order entered at the September 1927 Term of Rowan Superior Court, P. S. Carlton, Receiver of Brown Insurance & Realty Company, conveyed by two separate deeds dated 1 October 1927, which are recorded, all of the two lots held by him as Receiver to the Post Publishing Company, and to James M. Davis and wife, except the strip of land which is the subject of this action. The deeds to the Post Publishing Company, and to James M. Davis and wife, except in full in the record. The summary of the deed to the Post Publishing Company in the record does not show the granting of an easement. The summary of the deed to James M. Davis and wife contains this language from the deed: "Also an easement or right of way over the following described lot: Beginning at a stake on the East side of Church Street 204 feet South 47 deg. West from the South corner of the intersection of Innes and Church Streets, corner Salisbury Hardware & Furniture Company; thence with line of Salisbury Hardware & Furniture Company South 42 deg. 45 min. East 100 feet to a stake; thence North 47 deg. 45 min. East 10 feet; thence Northwest and parallel with Innes Street 100 feet to Church Street; thence South 47 deg. West with Church Street 10 feet to the beginning." The strip of land upon which this easement is granted is the strip of land which

is the subject of this action. However, the strip of land which is the subject of this action runs back from Church Street 200 feet, and this easement runs back from Church Street 100 feet.

At the May 1935 Term of Rowan County Superior Court, P. S. Carlton, as Receiver, filed a report stating that he held several houses and lots free from encumbrances, except taxes, and, in his opinion, this property should be advertised for sale privately.

By virtue of an order entered at the May 1936 Term of the Rowan County Superior Court, P. S. Carlton, Receiver, conveyed to plaintiff by deed dated 26 May 1936, and recorded on 14 September 1937, the strip of land which is the subject of this action. The description of this strip of land in this deed is the same as that used in the Receiver's deed to James M. Davis and wife in granting them an easement over it. This deed states that this strip of land is "subject, however, to the easements or rights of way for the purpose of ingress, egress and regress in, to, upon or over said lot heretofore conveyed by F. R. Brown, or Brown Insurance & Realty Company, or P. S. Carlton, Receiver, to Post Publishing Company of (sic) James M. Davis and wife, Rebecca Davis, or others, as will appear by reference to the deeds, conveyances or written contracts heretofore made."

The plaintiff testified in substance on direct examination: That he bought this strip of land at an auction sale, paying for it a valuable consideration, and that Mr. Linn Bernhardt, president of the defendant, was present at the sale. This is the substance of his testimony on cross-examination: The strip of land was paved when he bought it. He does not know what use was made of this alley before he bought it. That he paid P. S. Carlton, the Receiver, $260.00 for this alley and 2 lots in another part of the city. He did not pay any taxes on this alley to the city or county, until the city sued him for taxes on it about 1952. The defendant began using the alley in 1948 when it made a parking lot, and entrance into the lot. He doesn't know what it did before then. He knew that people in automobiles, delivery trucks, express trucks and people on foot have used the alley since 1936. The plaintiff was recalled as a witness, and testified in substance: The tax suit was for taxes on this strip of land. He paid the judgment for taxes. He has continued to pay taxes on it since the tax suit. He has paid county taxes on this strip of land. No one has paid taxes on it since he bought it.

Plaintiff introduced in evidence the judgment roll of a suit instituted by the city of Salisbury against him and his wife on 9 March 1950 in the Superior Court of Rowan County. This judgment roll consisted of the summons, complaint, judgment and final report and settlement of the commissioner. The summons was served on the de-

fendants on 10 March 1950. The complaint alleges that the defend-
ants are the owners of the strip of land, which is the subject of this
suit, and describes it by metes and bounds, using the same descrip-
tion as in the deed of P. S. Carlton, Receiver, to the plaintiff, which is
the same description used in plaintiff's complaint here, and then al-
leges that the defendants are indebted to the city for ad valorem taxes
on this strip of land from 1936 to 1949, inclusive, in the principal
sum of $272.18. Judgment was entered against the defendants on 25
August 1952 in the principal sums of $272.18 and $49.96, and a com-
missioner was appointed to sell the property. On 11 October 1952 the
commissioner reported to the court that the defendants had paid all of
the taxes, interest and costs due under the judgment.

About the time the above taxes were paid, the city of Salisbury
had been using this alley to collect garbage and trash from several
stores on Main and Innes Streets. On 6 October 1952 plaintiff wrote
the city manager a letter requesting that this alley not be used by
the city, except by the police and fire departments, unless it obtained
permission from him. On 7 October 1952 the city manager of Salisbury
wrote a letter to the stores on these streets and to the defendant, in
which was copied plaintiff's letter to the city, requesting them to have
their trash placed at the curbline of West Innes Street or Main Street
for collection, and stating, should there be any modification of plain-
tiff's decision, he would communicate with them.

The city manager testified in substance: When the city received
plaintiff's letter, it immediately stopped using the alley. Plaintiff sub-
sequently gave the city permission to use it, and the city did so. He
was city manager from July 1949 to January 1955. The city did not
maintain the alley so far as he knew.

Defendant has a deed for a lot fronting on Church Street. Its cor-
ner on the North comes to the edge of the paving on the alley.

The defendant offered evidence substantially as follows:

Testimony of Delmar Goodman. He has worked for defendant since
2 October 1929. The alley was paved before he began work there. The
defendant and its customers have been using this alley continuously
since 1929 for delivering and using merchandise. There is a ramp at
the back of defendant's building which connects with the alley. The
doorway on the ramp was used by defendant's trucks for loading and
unloading.

Testimony of R. L. Bernhardt, Jr., secretary-treasurer of defendant.
He has been employed by defendant since 1937. His grandfather and
father were presidents of the defendant. The defendant, its employees
and customers have been using this alley every day since 1924 up to
the present, except a short time when a sewer line was laid. On cross-

examination he said the defendant had no deed for the alley, it had "no scrap of paper" from plaintiff authorizing it to use it.

Testimony of Henry Bernhardt, president and general manager of defendant. He is 32 years old, and cannot remember when the defendant did not use the alley constantly. The defendant does not have any deed or agreement that it can use the alley.

Testimony of Henry Hobson. He knows the defendant has used the alley for the last 25 or 30 years. Substantially similar testimony was given by Paul Reynolds and W. D. Kizziah.

Testimony of J. T. Graham. He has been a customer of defendant since 1920. In 1920 there was an alley, but he can't say it was the alley, which is the subject of this suit. As a customer of defendant, he has used the alley.

Testimony of J. H. Weant. He worked for the city of Salisbury for 33 years, beginning work in 1919. He was street superintendent. He knew the alley before it was paved. For the city, he kept it worked with a road machine belonging to the city, so trucks could get in and out. The alley was paved by the Hedrick Paving Company. The city had a shop back in there for several years. The city used the alley going to and from its shop. The defendant and the public used the alley. People parked their cars back in there. The stores back in there used the alley. J. H. Weant's testimony does not show who paid for paving the alley.

Testimony of John Hoffman, 84 years old. He used the alley to go back and forth to the defendant's place of business from the time he was a small boy up to the present. The public used the alley ever since he was big enough to know anything.

Testimony of R. L. Roseman, 76 years old. He used the alley since 1923 up until the past few years to go to the defendant's place of business, and to the rear of two other stores. The public generally used the alley since 1918 or 1919.

Testimony of J. H. McKenzie, Postmaster of Salisbury. The public generally has used the alley since the early 1920s to the present. He used it in going back and forth to defendant's place of business. On cross-examination he said he did not think the alley was used before an auction sale of the Snider property.

Testimony of Charlie Neal. There are two or three alleys there. One on each side that you go in on. He used both alleys over a period of years, and has seen the public use them.

Testimony of Julian Smith. He handled freight through the alley to most all the stores from 1930 to 1941. Everybody used the alley.

Testimony of Harris Strickler. He has used the alley for 25 years.

Testimony of Charlie Wilhelm, a police officer of the city of Salis-

bury for 35 years. The public has been using the alley since 1923.

The court submitted the following issue to the jury: "Is the plaintiff the owner and in the possession of the land described in the complaint and in a deed from P. S. Carlton, Receiver, to the plaintiff, registered in book of deeds 234, page 294?" The jury under a peremptory instruction answered the issue, Yes.

From a judgment entered in accordance with the verdict the defendant appeals.

*Hayden Clement and D. A. Rendleman for plaintiff, appellee.*
*Nelson Woodson for defendant, appellant.*

PARKER, J. The defendant assigns as error the refusal of the trial court to submit to the jury the following issue tendered by it: "Is the property described in the complaint a public alley, as alleged in the answer?" The defendant further assigns as error this part of the charge: "The court holds as a matter of law upon the evidence that the alleyway in controversy is not a public road."

The defendant asserted in its answer that the plaintiff, or his predecessors in title, dedicated this alley to the public at large, and an acceptance of the dedication by the public generally and by the city of Salisbury, which kept up the alley, used it, and paved it.

There is no evidence in the case of any express dedication of the alley to some proper public use, and of a formal acceptance of the alleged dedication. There is no evidence of any sale of land with reference to a map or plat showing this alley. The question we are faced with is whether there is any evidence to sustain the defendant's allegations in its answer of a dedication by the owner, or owners, of the strip of land in controversy as a public alley, and of an acceptance of the dedication.

It is familiar learning that the owner of a strip of land can dedicate it as an alley to the public, and the intention to dedicate may, in a proper case, be inferred from the circumstances without a formal act of dedication. 16 Am. Jur., Dedication, p. 363; Anno. 58 A. L. R. 240-241.

The intention of the owner to set apart land for the use of the public is the foundation and very life of every dedication. *Milliken v. Denny,* 141 N.C. 224, 53 S.E. 867. In this case the Court quotes with approval from Washburn on Easements, 3rd Ed. p. 188, as follows: "The acts and declarations of the landowner indicating the intent to dedicate his land to the public use must be unmistakable in their purpose and decisive in their character to have that effect."

This Court said in *Tise v. Whitaker,* 146 N.C. 374, 59 S.E. 1012: "It is well understood with us that the right to a public way cannot

be acquired by adverse user, and by that alone, for any period short of twenty years. It is also established that if there is a dedication by the owner, completed by acceptance on the part of the public, or by persons in a position to act for them, the right at once arises, and the time of user is no longer material. The dedication may be either in express terms or it may be implied from conduct on the part of the owner; and, while an intent to dedicate on the part of the owner is usually required, it is also held that the conduct of the owner may, under certain circumstances, work a dedication of a right of way on his part, though an actual intent to dedicate may not exist. These principles are very generally recognized and have been applied with us in numerous and well considered decisions."

The case of *Summerville v. Duke Power Co.,* 4 Cir., 115 F. 2d 440, was an action to recover damages for the closing of a street or alley in the city of Charlotte, North Carolina. The Court said: "It is clear that there was no dedication by the owner of the strip of land in controversy as a public street or alley. The mere fact that it was used by the occupants of the houses on the property as a means of ingress or agress has no tendency to establish such dedication, nor does the fact that its use by the public was permitted."

"The owner's intention to dedicate some particularly described land to a public use must be clear. It may be manifested by his affirmative acts whereby the public use is invited and his subsequent acquiescence in such use, by his express assent to, or deliberate allowance of, the use, or merely by his acquiescence therein. . . . In order to establish a dedication, the acts and declarations of the owner must not be inconsistent with any dedication." 16 Am. Jur., Dedication, Sec. 20.

From the authorities which we have cited it seems clear that no owner of this strip of land, which is the subject of this action, has done anything from which a clear intent, unmistakable in purpose, to dedicate this strip of land to the public can be drawn or inferred. The fact that P. S. Carlton, the Receiver, in 1936 acting under an order of the court, sold and conveyed this strip of land to plaintiff, and stated in the deed that it was "subject, however, to the easements or rights of way for the purpose of ingress, egress and regress in, to, upon or over said lot heretofore conveyed by F. R. Brown, or Brown Insurance & Realty Company, or P. S. Carlton, Receiver, to Post Publishing Company of (sic) James M. Davis and wife, Rebecca Davis, or others, as will appear by reference to the deeds, conveyances or written contracts heretofore made," is inconsistent with any dedication to the public of this strip of land, while it was in his possession as Receiver. It would also seem from this statement in the deed that F. R. Brown and Brown Insurance & Realty Company also granted

easements of ingress and egress over this strip of land, which is inconsistent with any dedication to the public of this strip of land by him or the corporation. W. F. Snider and wife conveyed a lot embracing this strip of land to F. R. Brown, who, in turn, conveyed it to Brown Insurance & Realty Company. There is no evidence from which it can be inferred that the Sniders dedicated this strip of land to the public. The mere fact that plaintiff permitted the public, in company with others having an easement, to use this strip of land, has no tendency to establish a dedication by plaintiff. The fact that plaintiff has paid taxes to the city and county on this strip of land since 1936 tends to negative any alleged intent on his part to dedicate it to the public. Annotation L. R. A. 1916B, p. 1175 *et seq.* The fact that the city of Salisbury sued plaintiff for ad valorem taxes on this strip of land, and collected them, and is still collecting taxes from plaintiff on it, tends to show there has been no dedication and acceptance. *Lee v. Walker,* 234 N. C. 687, 68 S.E. 2d 664; 16 Am. Jur., Dedication, Sec. 80; Annotation L. R. A. 1916B, p. 1175 *et seq.* When the city received a letter from plaintiff in 1952 requesting it not to use this strip of land, except for the police and fire departments, the fact that it immediately stopped using it tends to show no dedication and acceptance. This stoppage of use of this alley by the city, and its suit for taxes on this alley tends to show a permissive use of the alley by the city, and not a use by a claim of right by reason of a dedication and acceptance. The alley was paved by the Hedrick Paving Company, but there is no evidence as to who had it done, or who paid for the paving. The fact that J. H. Weant for the city worked the alley so trucks could get in and out, under all the facts here, is not sufficient to permit an inference that there has been a dedication and acceptance of this alley.

Dedication is an exceptional and peculiar mode of passing title to an interest in land. The Supreme Court of California in *City and County of San Francisco v. Grote,* 120 Cal. 59, 52 P. 127, 128, 41 L.R.A. 335, 65 Am. St. Rep. 155, said: "It is not a trivial thing to take another's land, and for this reason the courts will not lightly declare a dedication to public use."

The assignments of error as to the court's holding as a matter of law upon the evidence that the alley is not a public alley, and to its refusal to submit an issue in respect thereto, are overruled.

Defendant assigns as error the part of the charge to the jury in which the court stated it held as a matter of law upon the evidence in the case that the defendant has no easement in the alley, and further assigns as error the refusal of the court to submit this issue timely tendered: "Is the defendant the owner of an easement over the prop-

erty described in plaintiff's complaint, as alleged in the answer?"

Defendant claiming a right of way by prescription over the strip of land which is the subject of controversy, has the burden of proving all the elements essential to its acquisition. *Williams v. Foreman,* 238 N. C. 301, 77 S.E. 2d 499; *McCracken v. Clark,* 235 N. C. 186, 69 S.E. 2d 184; *Perry v. White,* 185 N. C. 79, 116 S.E. 84.

Defendant must show, among other things, not only that it used a way over this land continuously and uninterrupted for twenty years, but also that such use was adverse or under a claim of right. *Williams v. Foreman, supra; Chesson v. Jordan,* 224 N.C. 289, 29 S.E. 2d 906; *Hemphill v. Board of Aldermen,* 212 N.C. 185, 193 S.E. 153; *Tise v. Whitaker, supra.*

A mere permissive use of a way over another's land, no matter how long continued, cannot ripen into an easement by prescription. *Williams v. Foreman, supra; Weaver v. Pitts,* 191 N.C. 747, 133 S.E. 2. "Permissive use is presumed until the contrary is made to appear." *Speight v. Anderson,* 226 N.C. 492, 39 S.E. 2d 371.

Defendant's evidence tends to show that it, its employees, and customers have been using this alley every day since 1924 up to the present, except a short time when a sewer line was laid. Plaintiff in his complaint alleges upon information and belief "that the defendant claims an estate or interest in said land adverse to the plaintiff, and that said alleged claim of the defendant is based upon an easement for the purpose of ingress and egress over said lands." Plaintiff, on cross-examination, said he alleged the above in his complaint. It would seem that plaintiff has alleged that the defendant is claiming an easement in this alley under a claim existing in its favor independent of all others. *Stanley v. Mullins,* 187 Va. 193, 45 S.E. 2d 881.

Plaintiff contends that if there has been any adverse use of this alley by defendant, it has not been a continuous adverse use for 20 years, for the reason that the appointment of the Receiver in 1926 stopped the running of any adverse use by the defendant.

It is well recognized law in this jurisdiction from the earliest times that when the Statute of Limitations has begun to run, no subsequent disability will stop it. *Pearce v. House,* 4 N.C. 722; *Mebane v. Patrick,* 46 N.C. 23; *Chancey v. Powell,* 103 N.C. 159, 9 S.E. 298; *Copeland v. Collins,* 122 N.C. 619, 30 S.E. 315; *Cameron v. Hicks,* 141 N.C. 21, 53 S.E. 728; *Holmes v. Carr,* 172 N.C. 213, 90 S.E. 152; *Caskey v. West,* 210 N.C. 240, 186 S.E. 324; *Battle v. Battle,* 235 N.C. 499, 70 S.E. 2d 492.

Ordinarily, the mere appointment of a receiver will not suspend the running of the Statute of Limitations, but the Statute of Limitations may be tolled where the circumstances are such that his appoint-

ment in effect precludes the bringing of suit. 54 C.J.S., Limitation of Actions, Sec. 249(c) ; 34 Am. Jur., Limitation of Actions, Sec. 249. See Annotation 21 A. L. R. 961, where it is stated, with cases cited, that "as a general rule, the mere appointment of a receiver will not suspend the running of the Statute of Limitations against an action on a debt due from the insolvent."

In *O'Connell v. Chicago Park District,* 376 Ill. 550, 34 N.E. 2d 836, 135 A. L. R. 698, it was held that the possessions of successive adverse holders of chattels may be tacked in determining the period of limitations. The Supreme Court of Illinois had this to say as to the effect of the appointment of a receiver on the running of the Statute of Limitations: "The cause of action having once accrued, the statute began to run at once, because the possession was wrongful from the outset, and no subsequent demand and refusal could start it afresh. *Watkins v. Madison County Trust & Deposit Co. supra.* The appointment of a receiver did not stop its running. *Houston Oil Co. of Texas v. Brown,* Tex. Civ. App., 202 S.W. 102, *certiorari* denied, 250 U.S. 659, 40 S. Ct. 9, 64 L. Ed. 1194; 4 Cook on Corporations, 7th Ed., p. 3367, section 871. The statute runs against the right of action, not against the holder thereof. *Hooker v. East Riverside Irrigation District,* 38 Cal. App. 615, 177 P. 184." See also 2 C. J. S., Adverse Possession, p. 730.

P. S. Carlton, Receiver of Brown Insurance & Realty Company, had express statutory authority, G.S. 55-148, to "demand, sue for, collect, receive and take into his possession all the goods and chattels, rights and credits, moneys and effects, lands and tenements, books, papers, choses in action, bills, notes, and property of every description of the corporation" of which he was Receiver. This statute is now codified as G.S. 1-507.2.

The defendant's evidence tends to show its adverse use of this strip of land since 1924. At that time a cause of action accrued in behalf of the owner of this strip of land by reason of such adverse use. Brown Insurance & Realty Company became the owner of this strip of land on 9 September 1924, and owned it when it went into Receivership in 1926. The cause of action by reason of such adverse use by the defendant having accrued in behalf of Brown Insurance & Realty Company before the appointment of its Receiver, the appointment of its Receiver did not stop the running of such adverse use.

After a careful examination of the evidence, we think that the question of whether the defendant has acquired a right of way over this strip of land by prescription should be determined by a jury.

The defendant on that question is awarded a
New Trial.

JOHNSON, J., concurring in part and dissenting in part: I concur in the conclusion that the evidence justifies a jury trial on the issue of prescription. Also, I am of the opinion that the evidence is sufficient to carry the case to the jury on the issue of dedication.

RODMAN, J., dissenting: The law with respect to the acquisition of an easement by adverse user is clearly and concisely stated in *Henry v. Farlow*, 238 N.C. 542. As there shown by copious citations, user alone is not sufficient; the owner must be put on notice of the adverse character of the use.

The language of *Clarkson, J.*, in *R.R. v. Ahoskie*, 202 N.C. 585, is I think, appropriate to the facts shown by this record. He said: "Neighborly conduct either on the part of a person or corporation ought not to be so construed as to take their property, unless it has such probative force as to show adverse user for twenty years. Much of defendant's evidence is in the nature of omissions by plaintiff railroad company in not being unneighborly and chasing trespassers off its property. The fact that this was not done, cannot be held for acquiescence or adverse user on the part of defendants. This goes too far, and we cannot agree to this . . ."

The evidence as summarized in the opinion of the majority is plenary to show use of the alley by defendant and any others who desire to use, but nowhere have I been able to discern any evidence tending to show that defendant's user was different in character from that of the other citizens of Salisbury. The only difference that I have been able to discover is that the defendant probably used the alley more frequently than the other witnesses it produced to testify to the fact of user. To my mind this evidence negatives the idea of adverse possession even more than it negatives the idea of dedication; but, if adverse, did not the permissive use by others interrupt defendant's possession and prevent it from acquiring by adverse possession? G.S. 1-40.

It does not seem to me that the complaint which alleges a shadow presently cast on plaintiff's title can be interpreted as indicating the cloud has been in existence for more than twenty years. My vote is to affirm.

BOBBITT, J., concurs in dissent.