CONCERNED CITIZENS v. HOLDEN BEACH ENTERPRISES

[95 N.C. App. 38 (1989)]

CONCERNED CITIZENS OF BRUNSWICK COUNTY TAXPAYERS ASSOCIATION, RAYMOND COPE AND ROYAL WILLIAMS AND STATE OF NORTH CAROLINA, EX REL. S. THOMAS RHODES, SECRETARY OF THE DEPARTMENT OF NATURAL RESOURCES AND COMMUNITY DEVELOPMENT, PLAINTIFF INTERVENOR v. HOLDEN BEACH ENTERPRISES, INC.

No. 8813SC1075

(Filed 15 August 1989)

1. **Easements § 6.1— road to beach—no prescriptive easement— use of road interrupted by defendant—use not confined to definite and specific line**

   In an action to determine whether the public's previous continuous and uninterrupted use of a pathway through defendant's property established a prescriptive easement in its favor, the evidence was conflicting but was sufficient to support the trial court's conclusions that (1) defendant had interrupted the public's use since 1963 by placing a log, cable, gates and a guardhouse across the road so that public use of the pathway was not continuous and uninterrupted for a twenty-year period and (2) the public's use of defendant's property was not confined to a definite and specific line of travel for twenty years where defendant's witnesses testified that there was no single path through defendant's property.

2. **Easements § 6.1— action to establish existence of easement— no presumption that easement was in State** ·

   There was no merit to plaintiff's argument that this was an action to establish title to an easement in favor of the public and therefore, pursuant to N.C.G.S. § 146-79, title to the easement was presumed to be in the State, since N.C.G.S. § 146-79 applies in those cases where title to the land is in dispute, not where the State has conceded defendant owns the land but is attempting, as here, to establish the existence of an easement over the land.

3. **Dedication §§ 1.2, 3— road across private property to beach— no express acceptance of a dedication**

   The trial court properly concluded that there was no express acceptance of a dedication of a road across private property at Holden Beach and that the public's continued use of the road as well as the providing of police and fire protection, water service, and garbage service by the Town of Holden

CONCERNED CITIZENS v. HOLDEN BEACH ENTERPRISES

[95 N.C. App. 38 (1989)]

Beach were insufficient actions to constitute an implied acceptance of defendant's offer to dedicate, since merely providing municipal services to homeowners in a subdivision within a municipality does not constitute an implied acceptance by the municipality of dedication of a road when the homeowners have paid for those services by the payment of their ad valorem taxes.

4. **State § 2— access to public beach—"public trust doctrine" inapplicable**

The public trust doctrine will not be extended to secure public access to a public beach across the land of a private property owner without compensation.

APPEAL by plaintiffs and intervenor-plaintiff from *Briggs, Judge.* Judgment entered 12 November 1987 in Superior Court, BRUNSWICK County. Heard in the Court of Appeals 17 May 1989.

Plaintiffs Concerned Citizens of Brunswick County Taxpayers Association (Association), an unincorporated association, Raymond Cope (Cope), and Royal Williams (Williams) brought this declaratory judgment action against defendant Holden Beach Enterprises, Inc. requesting that the trial court declare that a road through defendant's property on Holden Beach is a public right-of-way.

Holden Beach is one of North Carolina's barrier islands located in Brunswick County. The length of the island runs along an east-west axis. Holden Beach is bordered by the Atlantic Ocean to the south and the Intracoastal Waterway to the north. To the west of the island is Shallotte Inlet and to the island's east is Lockwood's Folly Inlet.

Ocean View Boulevard is a state-maintained highway which runs the length of Holden Beach and, generally, parallels the Atlantic Ocean. On the western end of the island the road ends at a guardhouse built and manned by defendant. The guardhouse marks the entrance to defendant's property, a residential subdivision known as Holden Beach West. Beyond the guardhouse a road known as Ocean View Boulevard West extends further west into the subdivision about seven-tenths of a mile ending about 1,700 to 1,800 feet east of Shallotte Inlet. It is undisputed that defendant built and paved Ocean View Boulevard West without the aid of State funds.

Plaintiffs' complaint alleged that the Town of Holden Beach had either expressly or impliedly accepted an offer of dedication of Ocean View Boulevard West by defendant. The complaint also alleged that prior to the paving of Ocean View Boulevard West the public's previous continuous and uninterrupted use of a pathway through defendant's property established a prescriptive easement in its favor over what is now Ocean View Boulevard West.

On 10 April 1987 pursuant to the Coastal and Estuarine Water Beach Access Program, G.S. 113A-134.1, et seq., the North Carolina Department of Natural Resources and Community Development (NRCD) moved to intervene as a matter of right as a party plaintiff. Intervenor-plaintiff's complaint recited that the NRCD was vested with the power and responsibility to administer and manage the right of public access to the beaches, including any right of access which this declaratory judgment action might establish. NRCD requested to appear on behalf of all North Carolina citizens. The intervenor-plaintiff's complaint then incorporated by reference the allegations of plaintiffs' complaint without alleging any additional claims against defendant. On 30 April 1987 the trial court granted NRCD's motion to intervene.

The trial court heard the case without a jury and concluded that the public had not acquired a prescriptive easement over defendant's property and there had not been a dedication of Ocean View Boulevard West for public use. From the trial court's order plaintiffs and intervenor-plaintiff appeal.

*Attorney General Thornburg, by Assistant Attorney General J. Allen Jernigan, for the State.*

*Maxwell, Freeman & Beason, by James . B. Maxwell, for plaintiff-appellants.*

*Murchison, Taylor, Kendrick, Gibson & Davenport, by Vaiden P. Kendrick, Barbara J. Sullivan, and Reid G. Hinson, for defendant-appellee.*

EAGLES, Judge.

The issues here all relate to whether the public may have access through defendant's property to the beach at Shallotte Inlet. Specifically, appellants assign as error the trial court's denial of a prescriptive easement for public access through Holden Beach

West and the trial court's failure to find that there has been a dedication of Ocean View Boulevard West. We affirm.

Initially we note that when the trial court is the fact-finder its findings of fact are conclusive on appeal if supported by any competent evidence even though there is evidence which might support a contrary finding. *Williams v. Insurance Co.*, 288 N.C. 338, 218 S.E.2d 368 (1975). Our standard of review in a declaratory judgment action is whether the record supports the trial court's findings and whether the findings support the trial court's conclusions. *Insurance Co. v. Allison*, 51 N.C. App. 654, 277 S.E.2d 473, *disc. rev. denied*, 303 N.C. 315, 281 S.E.2d 652 (1981).

In *West v. Slick*, 313 N.C. 33, 326 S.E.2d 601 (1985), our Supreme Court restated the elements necessary to establish a prescriptive easement:

1. The burden of proving the elements essential to the acquisition of a prescriptive easement is on the party claiming the easement.

2. The law presumes that the use of a way over another's land is permissive or with the owner's consent unless the contrary appears.

3. The use must be adverse, hostile, or under a claim of right. . . .

4. The use must be open and notorious. . . .

5. The adverse use must be continuous and uninterrupted for a period of twenty years. . . .

6. There must be substantial identity of the easement claimed. . . .

*Id.* at 49-50, 326 S.E.2d at 610-611.

Plaintiffs and intervenor-plaintiff presented evidence which tended to show the following: Loie Priddy, a land surveyor with the North Carolina Geodetic Survey, testified as an expert witness in coastal surveying and interpretation of aerial photography. Using aerial photographs and maps of the Shallotte Inlet and Holden Beach areas which spanned from 1962 until 1972 Priddy testified that there were several definite trails through defendant's property. He described the trails as "several pedestrian appearing trails going to the beach and one vehicular trail." On each of the photo-

graphs he testified that the vehicular trail began at the end of a paved road, Ocean View Boulevard, and that the trail continued west about 3,200 feet to a large sandy overwash area. In this overwash area Priddy could not detect any trails but was able to point to a number of trails emerging from the west edge of the overwash towards the beach. The overwash area he explained was a low spot which resulted from Hurricane Hazel in 1954. Additionally, because the overwash was a low spot in the terrain it was subject to continued flooding which would obliterate any trails through that area.

Harrell Paden, a long-time Brunswick County resident, testified that from about 1930 until the 1950s he and his family had been going to the Shallotte Inlet area of Holden Beach on a seasonal basis to fish. He stated that the owner of the property, Peter Robinson, allowed people to use the property. He further testified that he used the pathway described by Priddy to get to the beach. Paden claimed that the pathway he used was in the same general location as the present Ocean View Boulevard West. He also testified that the present road is straighter than the pathway and located a little further away from the beach. Until about 1972 Paden's trips to the beach were unimpeded. However, in 1972 the owners of the property put a log across the road at approximately the same spot where the guardhouse is now located. Paden stated that a short time later the log disappeared and he continued using the road to get to the beach. Two or three years later a farm gate was put up to block the road.

Kermit Coble, a former member of the Holden Beach Town Council, next testified that he first came to Holden Beach in 1954. He frequently visited the Shallotte Inlet using the pathway which continued west after the paved road stopped. Coble testified that Ocean View Boulevard West was within 100 feet of the pathway he had used to get to Shallotte Inlet. He further testified that until a log was placed across the pathway he had never been prevented from using it to get to Shallotte Inlet. Coble stated that the log was placed across the trail during the 1960s. After a short time a cable replaced the log and a little later a gate was placed. While the gate was kept locked, he could get the key from a realtor and use the pathway for access to the beach.

Plaintiff Raymond Cope, a member of the Association, testified that he and his family had been camping on the west end of Holden

Beach since 1973 or 1974. He would drive to the beach by driving west onto a path at the end of Ocean View Boulevard to the beach. Cope said that at least once or twice a month during the summer he would bring his family to this beach. He also testified that there is not much difference in location between the present road and the path he used to drive to Shallotte Inlet.

Defendant's evidence tended to show the following. James D. Griffin, Jr., an employee of defendant and former employee of defendant's predecessor, Holden Beach Realty Corporation (Corporation), testified that on 8 August 1985 defendant purchased the property now known as Holden Beach West from Corporation. He further testified that Corporation acquired the property in 1961 or 1962 from the Robinson heirs and other parties. At the time the Corporation purchased the property, there were no houses or roads on the land. In fact, the State road ended over a half mile from the eastern edge of the Corporation property. Griffin claimed there were trails all over the property. Griffin stated that the paths were not of a permanent nature and that a severe storm would obliterate the trails at low points.

In the 1960s the Corporation placed "no trespassing" signs throughout the property. At some time in the late 1960s Griffin placed a telephone pole across the pathway where he estimated the defendant's property line was. Occasionally the pole would be moved and Griffin would put it back. A year or so later Griffin cut the telephone pole in half and used each half to secure a cable to block the path. The cable stayed up for a year or two. While the cable caused some people to turn around, others would drive around it and continue along the path. In the middle 1970s the Corporation placed gates across the path which were kept locked. Finally, in 1985 defendant placed a guardhouse at the entrance to the subdivision.

Griffin further stated that in 1977 and 1978 the Corporation built a marl road through the property generally parallel to the ocean. No county equipment or funds were used to build the road. Griffin testified that he had been a member of the Holden Beach Town Council for ten or twelve years. He said that he knew of no town money having been spent on constructing Ocean View Boulevard West within the subdivision. Furthermore, there were no city lighting facilities within Holden Beach West. The Holden Beach police did not enforce traffic regulations within the subdivision.

Elwood Newman, a resident of Holden Beach for 18 years, testified there had been no single pathway to Shallotte Inlet through defendant's property. He further testified that starting in 1970 he was a member of the Holden Beach beach patrol. His duties included keeping vehicles off the beach. On the occasions that he saw people in the area now known as Holden Beach West, he asked those people to leave. The owners of the property asked the beach patrol to watch their property. Finally, he testified that the property on the western end of the island was considered private property. Several other witnesses as well testified that they always felt that defendant's property was private property.

[1] After finding facts the trial court concluded that defendant had interrupted the public's use since 1963 so that public use of the pathway was not continuous and uninterrupted for a twenty year period. The trial court further concluded that the public's use of defendant's property was not "confined to a definite and specific line of travel for twenty years."

On the issue of whether there existed through defendant's property a single line of travel whose use was continuous and uninterrupted, the evidence is conflicting. Plaintiffs' witnesses claim that they had used the same pathway to drive to Shallotte Inlet for years. Defendant's witnesses stated that there was no single path through the western end of Holden Beach. Additionally, defendant's evidence demonstrated that since the 1960s they have attempted to restrict people from traveling through and on their property. Elwood Newman testified that he had been asked by defendant's predecessor to request that people found on the property be asked to leave. The evidence here permits but does not compel the findings of fact and conclusions of law drawn by the trial court. We hold that there is competent evidence to support the trial court's findings and that the findings of fact support the conclusions of law. Accordingly, we overrule this assignment of error.

[2] Plaintiffs further argue that this is an action to establish title to an easement in favor of the public and, therefore, pursuant to G.S. 146-79, title to the easement is presumed to be in the State. We disagree. G.S. 146-79 applies in those cases where title to the land is in dispute; not where the State has conceded defendant owns the land, but is attempting to establish the existence of an easement over the land. *See State v. Taylor*, 63 N.C. App.

CONCERNED CITIZENS v. HOLDEN BEACH ENTERPRISES

[95 N.C. App. 38 (1989)]

364, 304 S.E.2d 767 (1983), *disc. rev. denied and appeal dismissed*, 310 N.C. 311, 312 S.E.2d 655 (1984).

[3] Plaintiffs next assign as error the trial court's denial of their claims that defendant had dedicated Ocean View Boulevard West for public use. Our Supreme Court in *Owens v. Elliot*, 258 N.C. 314, 317, 128 S.E.2d 583, 586 (1962), stated that the dedication of a street for the general public's use is a revocable offer "and is not complete until accepted, and neither burdens nor benefits with attendant duties may be imposed on the public unless in some proper way [the public] has consented to assume them." Furthermore, the recording of a plat denoting the lots and streets, nothing else appearing, impliedly offers to dedicate the streets for public use. *Blowing Rock v. Gregorie*, 243 N.C. 364, 90 S.E.2d 898 (1956). However,

> a dedication is never complete until acceptance. This acceptance may be shown not only by formal action on the part of the authorities having charge of the matter, but, under certain circumstances, by user as of right on the part of the public, or other facts, but unless and until acceptance has been in some way established, it should be properly termed an offer to dedicate on the part of the owner.

*Id.* at 368, 90 S.E.2d at 901.

The evidence is undisputed that the Town of Holden Beach took no action expressly accepting any offer of dedication made by defendant through the recording of a plat of the Holden Beach West subdivision. Accordingly, we affirm the trial court's conclusion that there was no express acceptance of a dedication of Ocean View Boulevard West.

Plaintiffs argue that the public's continued use of Ocean View Boulevard West as well as the providing of police and fire protection, water service, and garbage service by the Town of Holden Beach are actions sufficient to constitute an implied acceptance of defendant's offer to dedicate. We disagree.

The trial court here explicitly found that no public funds or equipment were used to construct or maintain Ocean View Boulevard West. In addition, the Town of Holden Beach has never authorized or enforced any traffic regulations on Ocean View Boulevard West. Finally, the trial court found that homeowners within the subdivi-

sion are residents of the Town of Holden Beach and are taxed at the same rate as other residents of the town.

Mr. Griffin's testimony alone supports each of these findings. We hold that merely providing municipal services to homeowners in a subdivision within a municipality does not constitute an implied acceptance by the municipality of dedication of a road when the homeowners have paid for those services by the payment of their *ad valorem* taxes. *See Nicholas v. Furniture Co.*, 248 N.C. 462, 103 S.E.2d 837 (1958). Plaintiffs here have failed to sustain their burden of showing that public authorities have assumed control of Ocean View Boulevard West for a period of twenty years. *Owens* at 317, 128 S.E.2d at 586. Accordingly, we affirm the trial court's conclusion that there was no implied acceptance of defendant's offer to dedicate the road.

[4] Finally, we note that in its joint brief plaintiffs and plaintiff-intervenor rely heavily on the "public trust doctrine." They argue that holding our State's beaches in trust for the use and enjoyment of all our citizens would be meaningless without securing public access to the beaches. However, plaintiffs cite no North Carolina case where the public trust doctrine is used to acquire additional rights for the public generally at the expense of private property owners. We are not persuaded that we should extend the public trust doctrine to deprive individual property owners of some portion of their property rights without compensation. *See Matthews v. Bay Head Improvement Assoc.*, 95 N.J. 306, 471 A.2d 355, *cert. denied*, 469 U.S. 821, 83 L.Ed.2d 39, 105 S.Ct. 93 (1984). Rather, we believe that the doctrine should be used to shield those properties in the public trust from unlawful use. *E.g., State ex rel. Rohrer v. Credle*, 322 N.C. 522, 369 S.E.2d 825 (1988).

Affirmed.

Judges PARKER and ORR concur.