# Richmond

## A. R. Stanley v. W. J. Mullins, and Others.

January 12, 1948.

Record No. 3260.

Present, All the Justices.

The opinion states the case.

*S. H. & Geo. C. Sutherland*, for the appellant.

*G. Mark French*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The complainants below were W. J. Mullins, Missouri Blevins, Sis Stanley and Cumbo Blevins. They filed their

bill for an injunction against A. R. Stanley to compel him to remove a fence which he had built across a road through his land, which the complainants claimed they were entitled to use, and for damages. The basis of their claim is thus stated in their bill:

That the complainants are residents of Dickenson county, and their freehold possessions are on Caney Ridge, in said county, where they reside; that they and the defendant claim title through Brandy Jack Mullins, who once owned all the land belonging to the complainants, as well as the land owned by the defendant, Stanley;

That while Brandy Jack Mullins owned said lands, he and his family and tenants used a passway and road through the land of defendant, Stanley, which "was in use by your complainants from that time and before that time making a total of over 60 years that said road and passway has been used under a claim of right and without objection by the defendant and those under whom he claims;"

That said road is the only convenient way that the complainants have from their homes to the public road;

That the State and county have repaired said road and expended public funds thereon within the last twenty years;

That unless the road is opened, complainants' farms and homes will become practically worthless and they will suffer irreparable injury.

The defendant demurred to the bill and also filed an answer denying that Brandy Jack Mullins ever owned the lands now owned by the complainants and defendant, and that he and his family and tenants ever used a road or passway through the defendant's land, and that any such road had been used by the complainants for sixty years, or that they ever used any such passway under a claim of right; but that, to the contrary, the only claim made by the complainants was the right to pass over a public road through defendant's land, which defendant denied ever existed; and that the defendant merely permitted the complainants to pass over his land until they recently tore down his fences and ran over his crops, and he stopped them.

Depositions were taken and the trial court granted the injunction requiring Stanley to remove all obstructions "across the road set out and described in the bill and proceedings in this cause through his land."

The errors assigned are to the action of the court in overruling the demurrer, and in granting the injunction, because, it is said, the evidence is insufficient to establish either a public or private right-of-way over any land "that came from Brandy Jack Mullins."

The complainants say in their brief that their bill was perhaps "inartfully" drawn, which is not an overstatement, and that the demurrer may have been well taken.

"The defendant is supposed to know the plaintiff's grievances *only from his statement of them in the bill*; and it is to the *precise case thus stated,* and to that case only, that the *defendant can be required to answer*; to the case so made the *evidence must be confined;* and no relief will be granted that *does not substantially accord with the case as made in the bill.*" Lile's Eq. Pl. & Pr., section 115, p. 62. See also, *Fulton* v. *Cox,* 117 Va. 669, 86 S. E. 133; *Tarter* v. *Wilson,* 95 Va. 19, 27 S. E. 818; *Dulaney* v. *Smith,* 153 Va. 118, 149 S. E. 441.

The bill is obviously lacking in important details. It fails to set forth the claimants' title, the location of their lands with respect to each other or to the defendant's land, or to the road in question; or any description of the road they claim, its width or its length, where it begins or ends; the character of the use relied on to establish the complainants' rights, or whether they claim a private right of passage by prescription or a public right over a public road.

The court in its decree recited the demurrer but did not rule on it, which had the effect of overruling it. *Bledsoe* v. *Robinett,* 105 Va. 723, 54 S. E. 861. It should have been sustained. Complainants say in their brief it was overlooked and not called to the court's attention. While that is not an adequate answer, it is not now material in view of the merits of the case as disclosed by the evidence.

If by saying in their bill that the State and county had

repaired the road and expended public funds on it, the complainants intended to charge that it was a public road, the evidence fails to support the charge.

Section 2039(32) of the Code provides that "where a way has been worked by road officials as a public road and is used by the public as such, proof of these facts shall be prima facie evidence that the same is a public road. * * * * ."

The only attempt at proof on this point was in the evidence of two witnesses. S. P. Dotson said that when he was working "on what was called the Relief Fund at that time," Jim Ratliff sent him and another man to repair this road and they worked there two days. When asked who was paying for it, he replied: "It was what they called the welfare. I reckon it was the government." That, he said, must have been fifteen years ago, or longer. There is no explanation of who Jim Ratliff was and no evidence that he was a road official. One other witness said he believed he had done some work on this road, but that he was not positive. He was working for Sam Mullins, who was "overseer" for the Board of Supervisors, and paid by them "as far as I know."

If this passway had been worked by road officials as a public road, it should have been an easy matter to establish that fact from the records, or at least by somebody who knew the facts. The evidence produced was not sufficient to make out a *prima facie* case under the statute.

As of March 1, 1932, all public roads not then in the State highway system were included in the secondary system of State highways. Code, section 1975hh. There are no signs or marks on the road in controversy to indicate that it is recognized as a State road. The defendant testified, and the complainants did not deny, that the complainants first claimed there was a public road through defendant's property, and had warrants issued against him for fencing it up, and they were dismissed.

If the bill intended to assert a right in the complainants by prescription, the evidence also fails to establish the

necessary elements of such a right. Those elements have been repeatedly stated.

"In order to establish a private right of way by prescription over the lands of another, the use and enjoyment thereof by the claimant must be shown to be adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the land over which it is claimed * * * ; and such use and enjoyment must continue for a period of at least twenty years * * * ." *Reid* v. *Garnett*, 101 Va. 47, 48, 43 S. E. 182. *Rhoton* v. *Rollins*, 186 Va. 352, 42 S. E. (2d) 323, and cases there cited.

It is difficult to apply the evidence in this case to the subject of the controversy because the witnesses were allowed to identify points simply by local names, meaningless to those not privileged to have lived in the community. Complainants' first witness apparently undertook to describe the road by telling that his father settled on Caney Ridge at the Forrest Kennedy place when he was a small boy, and arrived there this way: "He come down the Cranesnest to the mouth of Lyons' Fork; then come on down Cranesnest to the mouth of Alley's Creek; then up Alley's creek to the place what we call 'The Big Hill,' up that hill to the top o' the hill; then from there around to what was known as the Henry Adkins place." Most of the evidence is of the same character, unaided by any explanation that gives any understandable description of the road.

It does clearly appear, however, that Brandy Jack Mullins owned no part of the lands involved, and the evidence shows no connection between him and the titles, either of the complainants or the defendant. There is evidence indicating that the complainant, Mullins, acquired his title through Spence Adkins, and that the defendant, Stanley, derived his title through Henry Adkins. The evidence does not show what lands the other complainants own, or how they acquired them, or what their relation is to the road in question.

The evidence shows that there has been a road or passway of some kind for sixty years or more over the land now

owned by the defendant, but it also shows, without conflict, that no independent or proprietary right has been exercised or claimed by any of the complainants, but such use as they have made of the road has been in common with other people and depends for its enjoyment on similar rights in others.

Without exception, the complainants' witnesses testified to that effect. W. G. Rose, 81 years old, was asked how long the road had been used by the public and replied, "Ever since I can recollect." Asked what he meant by the public using it, he answered, "Everybody that lived up on top o' the hill went down that way and who ever lived down there come up that a way. That's what I mean, Mill roads an' so on, an' stores an' so on."

S. P. Dotson testified that as far as he knew everybody used it. G. W. Large said that anybody used it that wanted to, so far as he ever heard; that he never knew of any public funds being spent on it; that where he traveled the way was just a bridle path where people passed.

Another of the complainants' witnesses testified that this road, or path, is blocked by timber that W. M. Ritter cut across it several years ago.

W. J. Mullins, the only one of complainants who testified, said he had known the road all his life. He was asked: "What use has been made of the road during the time you remember? A. Everybody used it that wanted to. Q. How much use was made of it? A. Old man John Blevins lived down there, me and Love Stanley and all that lived in there had to go to mill, haul in what we bought and went to school." He further testified that after this controversy arose, he agreed with defendant, Stanley, that if Stanley would give him a twelve-foot road and put it on record he would build a fence on both sides of the road; that Stanley had such a contract drawn up, but he, Mullins, did not sign it.

This, and other evidence of like kind, clearly shows that the use of the path or road by the complainants was in common with others in the neighborhood and it entirely

fails to establish the "exclusive" use necessary to give the complainants a right-of-way by prescription.

"The use and enjoyment of a way in common with the public is not exclusive within the meaning of that term when used in reference to the acquisition of a private right of way by prescription. Whilst it is not necessary, in order to be exclusive, that he who claims the right of way should be the only one who can or may enjoy the same way over the land, yet his right must not depend for its enjoyment upon a similar right in others, and he should have the right to exercise it under some claim existing in his favor independent of all others. * * * ." *Reid* v. *Garnett, supra,* at p. 49. See also, *Witt* v. *Creasey,* 117 Va. 872, 86 S. E. 128; *Totten* v. *Stuart,* 143 Va. 201, 129 S. E. 217; *Pirman* v. *Confer,* 273 N. Y. 357, 7 N. E. (2d) 262, 111 A. L. R. 216, and annotation beginning at p. 221.

The bill does not allege and the evidence would not support a claim that the road has become a public road by virtue of public user.

In *Gaines* v. *Merryman,* 95 Va. 660, 663-4, 29 S. E. 738, it is said:

"The law with respect to public highways is well settled. In the case of *Commonwealth* v. *Kelly,* 8 Gratt. (49 Va.) 632, it was held that 'the mere user of a road by the public for however long a time will not constitute it a public road; that a mere permission to the public, by the owner of the land, to pass over a road upon it, is, without more, to be regarded as a license, and revocable at the pleasure of the owner; that a road dedicated to the public must be accepted by the county court upon its records, before it can be a public road; and that if a county court lays off a road, before used, into precincts, or appoints an overseer or surveyor for it, thereby claiming the road as a public road, and if, after notice of such claim, the owner of the soil permits the road to be passed over for any long time the road may be well inferred to be a public road.' " See also, *Terry* v. *McClung,* 104 Va. 599, 52 S. E. 355; *Lynchburg Traction, etc., Co.* v. *Guill,* 107 Va. 86, 57 S. E. 644; *Board*

*of Sup'rs* v. *Manuel*, 118 Va. 716, 88 S. E. 54; 17 Am. Jur., Easements, section 58, p. 970.

If there is public or community need for such a road as complainants here claim, chapters 83 and 85A of the Code provide methods for its establishment.

The decree granting the injunction is reversed and the suit of the complainants is dismissed.

*Reversed.*