## Richmond

B. L. LEE, ET AL. v. GEORGE LAMBERT, ET AL., ETC.

May 4, 1959.

Record No. 4920.

Present, Eggleston, C. J., and Buchanan, Miller, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*G. Mark French,* for the plaintiffs in error.

*Francis W. Flannagan,* for the defendants in error.

WHITTLE, J., delivered the opinion of the court.

B. L. Lee and Eliza Lee filed a motion for judgment against George Lambert and Charlie Lambert claiming that the defendants owed them approximately $3,000 for hauling coal over their land, and for "damages". Many pleadings and amended pleadings, hereinafter referred to, were filed in an attempt to bring the parties to issue. Upon the trial of the case, at the conclusion of the evidence, the

court sustained defendants' motion to strike and entered judgment in their favor. Plaintiffs were granted a writ of error.

The record discloses that Standard Banner Coal Corporation was the owner of all the minerals in a large boundary of land in Dickenson county. Eliza Lee, one of the plaintiffs, wife of B. L. Lee the other plaintiff, owned 40 acres of surface overlying part of the Standard Banner minerals. Mrs. Lee acquired this 40-acre tract from her mother. Her deed provided that Standard Banner Coal Corporation had the right to haul coal across and under the land, including the right to construct roads across the same.

By leases, George and Charlie Lambert, defendants, acquired from Standard Banner all the rights that Standard Banner had in the coal and surface of plaintiffs' land.

On June 10, 1946, George C. Long who had a coal lease from Standard Banner entered into a written contract with the Lees, agreeing to pay them $10 per month for the right to haul coal across the 40 acres of surface. On June 26, 1944, Rufus V. McCoy and Elmer Poore, holding a similar lease, entered into a five-year contract with the Lees, agreeing to pay them $10 per month for the right to haul coal across the surface.

George and Charlie Lambert acquired the Long and McCoy leases which were later merged into a direct lease from Standard Banner. They did not enter into a written agreement with the Lees either independently or by way of assignment of the McCoy and Long agreements; however, they paid the Lees $10 per month for haulage on the McCoy lease until 1948 when they subleased the property to one Stal Lambert and thereafter Stal Lambert continued the payments until February, 1950, at which time a chain was placed across the road by the Lees, blocking the same.

George and Charlie Lambert paid the Lees for haulage on the Long lease at the rate of $10 per month until one Ransom Lambert took over the lease, after which he paid the $10, according to his contract, for every month he operated the mines.

On June 19, 1954, the present motion for judgment was filed against George and Charlie Lambert alleging a suit in contract and tort, to which a demurrer for misjoinder of causes of action was interposed and sustained. Thereafter several pleadings were filed, including an amended motion for judgment, and on December 2, 1954, a bill of particulars was filed in which plaintiffs claimed: (1) A written assignment of the Long contract binding defendants to

pay $10 per month to plaintiffs; (2) a written assignment of the McCoy contract binding defendants to pay plaintiffs $10 per month; and (3) an alleged written contract between plaintiffs and defendants, made in the year 1950 (referred to as the "John W. Flannagan contract"), under which it was claimed that the defendants agreed to continue paying plaintiffs $10 per month, and further agreed to pay plaintiffs $1170 for removing 39,000 tons of coal from a tract known as "The Hay tract".

At this stage plaintiffs sought to establish and prove their case under contracts (1) and (2) as outlined above. Failing in this, and adding confusion to the situation, they changed their position and sought to bring into the picture contract number (3), the alleged "John W. Flannagan contract", thus attempting to merge the three contracts into one.

During the progress of the trial the evidence sought to be introduced by the Lees became so at variance with the allegations in the motion for judgment and claims in the bill of particulars that the court was prompted to ask their attorney:

"THE COURT: Mr. French, are you relying upon the implied contract for use and occupancy or are you relying on an express contract, and is the contract in writing or is it not?

"MR. FRENCH: We are relying on an express contract written up with John W. Flannagan in January or February of 1950, and delivered to Glyn Phillips, attorney for plaintiff, and which has been lost, or the plaintiffs' copy has been lost. It is provided [in the contract] that the defendants would pay for the benefit received by them for hauling a large amount of coal, to-wit, 39,000 tons. The proof will be that Mr. Lee, one of the plaintiffs, went to the defendants with his lawyer, Glyn Phillips, and the defendants' lawyer, John W. Flannagan, deceased, and told them that it was 39,000 tons of coal that they had hauled over him, and they agreed that it was 39,000 tons, but that they would pay him a reasonable amount for the benefit they had received for hauling such coal as was actually hauled over."

Suffice it to say that the "John W. Flannagan contract" as outlined by Mr. French was never established by proof. Much evidence was introduced which threw little or no light upon the confused issues. It was clearly established by the evidence that, while they were not legally bound to do so, the defendants paid the Lees $10 per month as long as they operated the mining leases in question; all

of which work ceased in 1950, four years before this suit was instituted.

The trial court, in ruling on the motion to strike the evidence, stated:

"As already indicated when the motion to strike was made at the close of plaintiffs' evidence, the court had difficulty in seeing how any verdict for the plaintiffs could be sustained. The motion to strike was overruled at that time because the court preferred to hear all of the evidence presented in the case. As stated in the recent case of the *Bank of Giles County* v. *Mason*, 199 Va. 176, [98 S.E. 2d 905]: 'Defendant is supposed to know the plaintiff's grievances only from his statement of them in the pleadings. Pleadings are as esential as proof, and no relief should be granted that doesn't substantially accord with the case as made in the pleadings.' *Stanley* v. *Mullins*, 187 Va. 193, 196, 45 S. E. 2d 881, 883; *Potts* v. *Mathieson Alkali Works*, 165 Va. 196, 207, 181 S. E. 521, 525. 'The relief granted should in any event have been limited to the grievance complained of in the petition.' This rule is applicable in proceedings at law, as well as proceedings in equity. The plaintiffs' notice of motion alleges an express contract alleged to have been made in writing. The burden of proof is upon the plaintiff to present evidence which is substantially in accord with the case alleged by the pleadings. The plaintiffs' pleadings in this case, including the bill of particulars, are not as clear as they might have been made. In order to clarify the situation, at the beginning of this case * * * the court asked counsel for the plaintiff to state to the court the plaintiffs' claim upon which the plaintiff relied for recovery. Counsel for the plaintiff stated * * * that the plaintiff was relying upon an express contract which has been referred to many times * * * as the John W. Flannagan contract. * * * Under the rights set forth in this deed [the deed to Mrs. Lee] the defendants clearly had the right to haul the coal which they had under lease over the plaintiff's land. According to the plaintiffs' evidence, it was this chancery suit in which Stallard Lambert and others sought to enjoin Eliza L. Lee and Bert Lee from interfering with their right to haul the coal over the Eliza Lee tract of land. Regardless of what had taken place between the parties up until that time, it is sufficiently clear according to the plaintiffs' testimony, as well as the plaintiffs' pleadings and statement of plaintiffs' counsel, that as a result of this injunction suit [seeking to have the chain removed from across the road] the parties met * * *, and

at the time were represented by counsel, and that is when the alleged express written contract [the John W. Flannagan contract] which the plaintiff alleges was made. If it was made as claimed by the plaintiff, it was clearly in consummation of anything that had preceded with reference to the rights of the parties. * * *

"* * * It is the opinion of the court that the plaintiffs' evidence fails to show the specific, express and written contract relied upon. Even if the evidence were sufficient to entitle the plaintiffs to recover upon a quantum merit, that is a different contract from the one alleged in the pleadings; under the well established rule as already pointed out, the plaintiff is entitled to recover, if at all, upon the case alleged in the pleadings. However, in any event, I am unable to see how the jury could arrive at any amount of recovery in this case except by mere speculation as to the amount of coal hauled over plaintiffs' land if there was any hauled which the defendants did not have a right to haul. A verdict for the plaintiff could not be sustained under the evidence, and therefore, the motion to strike the evidence is sustained."

We fully agree with the trial court that the evidence introduced was not in accord with the pleadings, and clearly there was no proof within the allegations of the pleadings or without the allegations establishing any sum due by the defendants to the plaintiffs.

Accordingly the judgment is

*Affirmed.*