# Richmond

CAROLINA, CLINCHFIELD AND OHIO RAILROAD COMPANY v. HAROLD MULLINS.

June 13, 1966.

Record No. 6225.

Present, Eggleston, C. J., and Spratley, Snead, I'Anson, Carrico and Gordon, JJ.

*M. M. Long* and *A. G. Lively*, for plaintiff in error, submitted on brief.

No brief or argument for defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Plaintiff, Harold Mullins, filed a motion for judgment against Carolina, Clinchfield and Ohio Railroad Company [Railroad] to recover damages for property lost and damaged in the March 12, 1963 flood of the McClure River. In his motion, Mullins alleged that Railroad "by its own acts, and through its agents, servants and

employees wrongfully and negligently built or caused to be built a certain trestle * * *, in such a manner as to cause the McClure River to be blocked and obstructed, and to cause said river to flood and overflow its banks, as a result of which," its waters "backed up into" the house of plaintiff, and damaged his personal property therein.

Railroad filed an answer and grounds of defense, in which it denied any negligence in the construction of its trestle; alleged that it was a public service corporation; that the trestle was necessary and indispensable to the performance of its duties as a common carrier; that it was constructed "in accordance with the advice and direction of skilled engineers of high qualifications;" and that plaintiff assumed the risk of damage to his property when he located his residence in an area which he knew was subject to flooding from the river in the event of heavy rains.

The case was heard before a jury. At the conclusion of the plaintiff's evidence, and at the conclusion of all the evidence, Railroad moved to strike on the ground that no negligence on its part had been established. The court overruled each motion, and Railroad duly excepted. After hearing the evidence and instructions of the court, the jury returned a verdict for plaintiff in the sum of $1,250.00.

Mullins has assigned no cross-error, and filed no brief in opposition to the relief sought by Railroad.

In its principal assignment of error, Railroad asserts that the evidence wholly failed to show that it negligently constructed its trestle. It also claims that the court erred in the admission of certain testimony and in the granting and refusing of certain instructions. In the view we take of the case, it is necessary for us to consider only the basic issue, that is: Was the evidence sufficient to show that Railroad was guilty of the negligence charged? We think that the answer should be in the negative for the reasons hereinafter stated.

Mullins, in his motion for judgment, based his right to recover solely on the ground that his damages "proximately resulted from the negligent method of constructing said railroad trestle." No other claim of liability of the Railroad is asserted, and for the purposes of this case, no other can be relied on. Any relief granted must, in any event, be limited to the grievance complained of in his pleading. *Stanley* v. *Mullins*, 187 Va. 193, 196, 45 S. E. 2d 881; *Bank of Giles County* v. *Mason*, 199 Va. 176, 180, 98 S. E. 2d 905; and *Lee* v. *Lambert*, 200 Va. 799, 803, 108 S. E. 2d 356.

The evidence may be summarized as follows:

Railroad is a public service corporation and a common carrier of freight, operating over its tracks in several States. It serves the Town of McClure in Dickenson County, Virginia. The town is principally located on the easterly side of McClure River, while the mainline tracks of Railroad are on the westerly side. In that area the river flows generally in a northerly direction. The Town of McClure has a number of important industries, including coal operations. Railroad has a sending and receiving station, or depot, in the town. In order to perform its duties and serve the town and its industries, Railroad constructed, in 1958 or 1959, a spur track from its mainline to its station in the town. In doing so, it was necessary to build a bridge or trestle across the river.

McClure River is a stream, with high mountains bordering it on each side. It is fed by smaller streams running down from the mountains. When heavy rains periodically fall and water reaches it from the mountain streams, it flows rapidly, sometimes overflowing its shallow banks and inundating a narrow strip of level land which adjoins it on the east. On occasions, the inundation reaches a depth of several feet.

Mullins was, on March 12, 1963, a tenant of one of five houses situated on the strip of land on the east side of the river, about 200 yards upstream from, or south of, the Railroad trestle. We are not told which one of the five houses he occupied. The southernmost house is about 15 yards from the bank of the river, and the northernmost about 30 yards. The floor level of each of the houses is approximately 10½ feet above the river bed. At the rear of the houses there is an access road parallel with the river, then a rock wall near the foot of a mountain which slopes toward the river.

Floods in this section of the river are more or less frequent, although one of the size and character here involved occurs only occasionally. One did happen in 1957 before the trestle was built, and water, at that time, flowed into the house which was occupied by Mullins in 1963.

After a heavy rainfall on March 12, 1963, and the night before, the river began to overflow its banks. The overflow reached the house of Mullins, and forced him and his family to vacate the premises. The water did not begin to recede until the dawn of March 13, after the rain stopped falling. Mullins then returned to his home and found that, at the peak of the flood, water had risen to 30 or

32 inches above the floor of his house, inflicting considerable damage on his household belongings.

Witnesses on behalf of Mullins testified that debris, consisting of logs, tree limbs, leaves, brush and mud, was carried against the trestle as the water rose in the river, the debris formed a dam, and the water backed upstream over the bank of the river and into the house of Mullins.

One of the witnesses, Rice Fields, said that, as a result of the obstruction of the flow of the stream, the water appeared to be going down one side of the river and up the other; that water flowed over the debris until the debris "got up so that it could flow on down through the bottom;" that on the morning of March 13, the water level on the upstream side of the trestle was 3½ to 4 feet higher than on the downstream side; and that while in 1963 the water rose 30 inches above the floor of his house, one of the five houses mentioned, the overflow barely got to the floor of his house in the 1957 flood.

Elmer Robinson said the water rose to within 4 or 5 feet below the main stringer of the trestle, and then poured over the debris "6 to 8 feet down" to the water below.

A. K. McIntyre, general counsel for the defendant, testified that Railroad, as a public service corporation, was a common carrier of freight, and that the construction of the trestle across McClure River was essential to the performance of Railroad's duties.

The construction of the trestle was described as follows: low flat concrete bases were first placed across the stream at a distance of 12 feet apart; upright wooden pilings 14 feet in length were then placed on top of the concrete bases; and the pilings were held in place by small pins of such size and strength as to break when any substantial force pressed horizontally against the pilings.

Louis C. Kerns, a civil engineer in the employ of Railroad for 19 years, testified that his duties were to lay out and supervise the construction of railroad tracks, bridges and buildings; that he had seen the plans for the trestle involved and had seen the trestle, although he did not take part in its construction. Said he: "This bridge is of a standard design that is in common use on the railroad. In fact, we have several places that this type structure is used on our main line, and in practically all cases on our sidetracks we use timber frame trestles of this same general construction." He ran levels over high water marks at the homes invaded by the March, 1963, flood,

as well as high water marks on the trestle from the same flood. As a result, he said: "I found that the water was about two and a half feet higher at the houses than it was at the bridge, which shows, of course, that the water was flowing from the houses towards the bridge because when water is dammed up, of course, it will go back level. And if the water had been only at the height of the high water at the bridge, it would not have damaged the houses. It wouldn't have been high enough to have damaged the houses if the water had been completely dammed at the bridge." Said he further: "Just upstream from the house in question, the stream comes down and makes a (left) curve; and, actually, it has a tendency for the water to come around and swirl in towards the houses," on the right.

J. M. Salmon, Jr., chief engineer of Railroad for 15 years, engaged in civil engineering work relating to the building and construction of railroad bridges of another railroad for more than 25 years prior thereto, testified that the trestle was designed and constructed under his direct supervision. He said he was familiar with the flooding that occurred at times in McClure River; had made calculations and studies of the river, with knowledge of the lay of the land and the location of the five houses above the railroad trestle; and had taken into consideration floods and flood planes of the river extending back to 1950, and the possibility of future floods. He said: "When we built the structure with the track at the elevation at which we built it, it was built so that the stringers and the ties and the rail, the deck of the bridge would be above the highest known flood plane that we were aware of and it was above the 1963 flood." Said he further: "This structure is built in accordance with the generally accepted practice of the American Railway Engineering Association, which is composed of practically all the railroads in the United States. It is typical of hundreds of thousands of structures under railroads and under highways. It is typical of a large number of such structures which we have supporting our main track at other locations. Some four or five are located between Dante and St. Paul." The trestle was so constructed that "If debris or any other substance dammed the water as high as four to eight feet, the effect would be to turn the trestle over or wash it off its foundation." He added that: "(W)ith this type of structure and the width of opening that is there, without a man-made condition it would be impossible to dam this river with this structure. Debris could not—could not hang on it to raise the flood plane to any appreciable height. The structure will go out before that occurred."

Salmon explained, referring to a plat introduced as an exhibit, that the course of the river, as it runs by the Town of McClure follows numerous bends and curves, and that a short distance south of the five houses herein mentioned, it makes a sharp turn to the left, and when it reaches a flood stage, it leaves its normal channel and throws its waters towards the houses.

Section 56-362, Code of Virginia, 1950 (1959 Repl. Vol.) provides in part:

"Any railroad corporation created under the laws of this State, which shall have fully located the route of its railway, may, in the construction of such railway on such route, cross any canal, navigable stream, or watercourse between its termini, *but in such manner as not unreasonably to impede the navigation and use thereof;* * * *." (Emphasis added.)

In 56 Am. Jur., Waters, § 31, page 520, the following is said:

"The rule is well settled that *one who obstructs a watercourse by a dam, embankment, or other structure must use reasonable care and skill in so constructing and maintaining it that it will not be the means of injurying another,* either below or above, by throwing the water back, or being incapable of resisting it under ordinary conditions; but his liability extends no further, and *he is not held responsible for inevitable accidents, or for injuries occasioned by causes which could not reasonably be anticipated or guarded against.*" (Emphasis added.)

In *American Locomotive Co. v. Hoffman,* 108 Va. 363, 370, 61 S. E. 759, we said that the degree of care required by a lower riparian owner in constructing culverts, building water gates and the like in order not to injure an upper landowner is that degree of care which a man of ordinary prudence would exercise under all the facts and circumstances of the case.

The evidence of plaintiff showed only that debris lodged against the supports of the trestle formed a dam, and the waters of the river then backed up and flowed into the house of Mullins. It does not point out any negligence in the construction of the trestle.

The burden was on Mullins to show some specific act or acts of negligence of Railroad, and that such negligence proximately contributed to his damage. Injury alone is not sufficient to support an action for damages arising from the alleged negligence of a defendant. Mere proof that the personal property of Mullins was damaged by flooding of the river due to debris lodging against the

supports of the trestle does not sustain his action. There must be a concurrence of wrong and injury, and the negligence of the alleged wrongdoer must be the cause of the injury.

The erection of the trestle was not an unlawful act in itself, and no cause of action could arise therefrom until damage resulted because of negligence in its construction. Negligence will never be presumed. In the absence of evidence on the question, the actor will be presumed free from negligence. *Barnes* v. *Barnes, Adm'r*, 199 Va. 903, 906, 103 S. E. 2d 199; *Green & Company* v. *Thomas*, 205 Va. 903, 907, 140 S. E. 2d 635; *Bly* v. *Southern Railway Co.*, 183 Va. 162, 174, 31 S. E. 2d 564, 172 A. L. R. 584, affirmed 183 Va. 406, 32 S. E. 2d 659. Cf. *Young & Sons* v. *Kirk*, 202 Va. 176, 183, 116 S. E. 2d 38.

The evidence is insufficient to prove that Railroad was negligent in constructing the trestle, the controlling issue here. There has been pointed out no specific act or acts of negligence, either by expert or lay testimony. On the other hand, there is adequate evidence to show that the trestle was designed and built in accordance with approved plans and practice of the engineering profession, and was, when built, adequate enough to accommodate the water which flowed under it, as well as that which could be reasonably expected to flow in the future. To hold otherwise would be to engage in speculation and surmise.

For the foregoing reasons, the judgment of the trial court is reversed and final judgment is hereby awarded to the Carolina, Clinchfield and Ohio Railroad Company.

*Reversed and final judgment.*