COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Beales, Russell and Senior Judge Haley
Argued by videoconference


JOHN STARK

v.        Record No. 0356-21-4

FIROUZEH DINARANY                                       OPINION BY
                                                JUDGE RANDOLPH A. BEALES
FIROUZEH DINARANY                                      NOVEMBER 30, 2021

v.        Record No. 0166-21-4

JOHN STARK

                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                              David Bernhard, Judge

            Tara Steinnerd Talley (Steinnerd Law PLLC, on briefs), for John
            Stark.

            Minji Kim (Alanna C.E. Williams; Cook, Craig & Francuzenko,
            PLLC, on briefs), for Firouzeh Dinarany.


        In these companion appeals, both John Stark and Firouzeh Dinarany appeal from a

divorce decree of the Circuit Court of Fairfax County.  Stark argues on appeal that "[t]he trial

court erred by including the parties' post-nuptial agreement into evidence" and further challenges

the trial court's decisions on spousal support and equitable distribution.  Dinarany also

challenges the trial court's rulings on spousal support and equitable distribution and further

argues that the trial court erred in its apportionment of attorney's fees.[1]

_____

        [1] In her brief, Dinarany's eighth assignment of error states that "[t]he trial court erred in
the amount of child support by not making an adjustment in favor of the Wife for support of
another child," but Dinarany expressly states on brief that "this assignment of error must also be
conceded."

## I. BACKGROUND

Stark and Dinarany were married on December 18, 2012. They have a daughter together, who was born during the marriage. Dinarany also has a son from a prior marriage.

At the time of the marriage, Stark served in the United States Army. He continued to serve until late 2016, when he retired from the Army and accepted a position as a diplomat with the United States Department of State. According to Stark, he served more than twenty-five years in the Army in total – the last four of which he served while married to Dinarany. Due to his military service, Stark earns a monthly retirement pension from the Army.

The parties own a home in McLean, Virginia, which they acquired during the marriage. In Stark's complaint for divorce, he stated that the parties "had tenants scheduled to move into the home in August, 2019" but alleged that Dinarany "unilaterally cancelled the contract for the tenants" and moved into the McLean home with the children at the end of July 2019. The parties thus separated at the end of July 2019. After the parties separated, Stark continued making mortgage payments on the McLean home until April 2020, after which he placed the home in mortgage forbearance. Stark testified that the forbearance permitted him to defer mortgage payments for up to one year with no penalty and that he would then pay back the deferred payments at the end of the forbearance period. He further testified that, as the only party named as liable on the mortgage, he did not need Dinarany's consent for the forbearance.

Stark and Dinarany executed two agreements that are relevant to these appeals. On December 17, 2012, the day before their marriage, they executed a prenuptial agreement. The prenuptial agreement contained a paragraph entitled "Dissolution of Marriage," which stated that "it is the express intention of John and Firouzeh that the following provisions shall prevail in the event of a dissolution" of the marriage:

> a. Each party shall have an equal interest in all property acquired
> by either party during the course of the marriage (except property

that is merely the result of an increase in the value of property owned separately by the parties prior to the marriage, as listed on the attached schedules).
b. All savings, investments, retirement accounts, and all property listed on the attached schedules as separate property (owned by a party prior to the marriage) shall remain the separate property of that party who brought such property into the marriage, including any appreciation, income, or other increase to such property.
c. All joint property and accounts shall be divided equally.
d. The parties shall have joint custody of any children born to or adopted into the marriage. Such joint custody entitles each party to equal visitation time, or time which is otherwise fair and equitable.

The agreement also provided that "in the event of a marital separation or dissolution, it is agreed and understood that neither party shall seek or obtain any form of alimony or support from the other, or seek any relief, other than a distribution of their joint property interests or those property interests acquired during the course of the marriage, in any manner other than as provided by this Agreement." In addition, the prenuptial agreement contained a provision governing revocation, which stated that any subsequent revocation "shall be ineffective until recorded with the recorder in the county where the parties maintain their primary residence or both counties if the parties are maintaining separate residences in separate counties."

The parties subsequently executed a postnuptial agreement on August 17, 2016. The postnuptial agreement is a one-page document that contains one operative provision, which says, "In consideration of the marriage between the parties, the parties mutually agree to the following: The pre-nuptial agreement of December 17, 2012 is nullified." The postnuptial agreement was signed by both parties and sworn before a notary.

Stark filed for divorce on April 13, 2020. In his complaint for divorce, Stark asked for a divorce "on the grounds of desertion" and requested specific and general relief from the trial court, including "[t]hat he be awarded physical and legal custody of the minor child of the parties; . . . [t]hat the Court divide, transfer or partition marital property which is titled in the names of both parties; . . . [t]hat the Court grant to Plaintiff a monetary award, payable in either a

lump sum or over a period of time in fixed amounts; [and] [t]hat he may be granted any and such further relief pursuant to Sections 20-107.1, 20-107.2 and 20-107.3[.]" The complaint did not refer to any prenuptial agreement between the parties. Dinarany filed a counterclaim for divorce on April 21, 2020, in which she asked for legal and physical custody, spousal support, child support, equitable distribution, attorney's fees, and "such other remedies as are available to her pursuant to the Court's equitable distribution and spousal support award powers[.]" A trial date was set for October 26, 2020. In setting the trial date, the circuit court entered a scheduling order providing that "[t]he parties shall complete discovery, including depositions, by thirty (30) days before the applicable trial date[.]"

During discovery, Stark produced the prenuptial agreement for the first time. Dinarany claimed that she then provided a copy of the postnuptial agreement to her counsel the following day. Dinarany's counsel claimed that he then sent the postnuptial agreement to Stark and his counsel. Stark's counsel denied receiving a copy of the postnuptial agreement and further argued that Dinarany and her counsel failed to produce *any* documents relevant to equitable distribution before the discovery deadline set by the scheduling order. Consequently, Stark filed a motion *in limine* seeking to exclude Dinarany's proposed financial exhibits as well as the postnuptial agreement itself. In the motion *in limine*, Stark argued that "[t]his property/support case is governed by a pre-nuptial agreement, which was properly disclosed in Plaintiff's discovery responses." In response, Dinarany argued that the postnuptial agreement nullified the prenuptial agreement and that Stark could not claim to be surprised by the postnuptial agreement given that he signed it and knew about it. The circuit court held a hearing on the motion *in limine* and subsequently entered an order barring Dinarany's financial exhibits from trial but ruling that "Defendant [Dinarany] may present the Post-Nuptial Agreement[.]" The following

Monday, October 26, 2020, was the first day of trial. On the morning of October 26, Dinarany's counsel recorded the postnuptial agreement in the Circuit Court of Fairfax County.

At trial, Stark testified that the parties signed a prenuptial agreement the day before the marriage. He then moved to admit *both* the prenuptial agreement and the postnuptial agreement into evidence. The trial judge stated, "Well, just by admitting it, I'm not saying that I'm going to enforce it. Obviously, you two are . . . disputing as to whether it is enforceable or not. I think I need . . . to review both agreements plus all the evidence to determine whether it is enforceable[.]" Stark's counsel replied, "Of course." Stark's counsel subsequently reiterated, "I don't have a problem with that coming in," and stated shortly thereafter,

> They are trying to say that Mr. Stark absolutely knew there was a postnup. We're not objecting to that. Of course, he knew there was one. We never said otherwise. He didn't have a copy of it, and he had no idea if it was going to be produced or not. They did produce it after the deadline. Again, we don't have a problem with it coming in.

The parties disputed whether the postnuptial agreement effectively revoked the prenuptial agreement according to the provision that any revocation "shall be ineffective until recorded with the recorder in the county where the parties maintain their primary residence or both counties if the parties are maintaining separate residences in separate counties," which involved a lengthy factual dispute over Stark's residence for purposes of the agreement. The trial court subsequently ruled that the recorded postnuptial agreement would be admissible and that the postnuptial agreement revoked the prenuptial agreement. The trial judge noted that "this Court, in particular me, takes very seriously the rules in discovery," but also noted that "[t]he problem in this particular case is that what is sought to be excluded is a particular item of evidence, an agreement, that both parties . . . an agreement that both parties knew existed." Continuing, the trial judge noted that "in this case, there are unusual circumstances that – this is not an expert report sought to be admitted or some item of evidence where the plaintiff doesn't know exactly

- 5 -

what they've signed. . . . This is an item of evidence that both parties knew existed and signed." On the issue of whether the postnuptial agreement revoked the prenuptial agreement, the trial judge reasoned that the parties had not shown that Stark maintained a residence in another county in which the agreement could be recorded. When Stark objected, the trial judge asked, "In which county does he have a separate residence?" His counsel responded:

> I'm going to be quiet. Because what's going to happen is I'm going to share that, and the defense is going to file it. And then what's going to happen is we're going to come back, and you're going to say, "Oops, it's a matter of equity now. I can't do anything about it." So, no, I elect not to elect that. And you have not taken evidence on where his residence is. So if it's coming in, let's let it come in, let's continue the trial, and we'll deal with it on appeal.

Consequently, the trial court proceeded to consider the issues raised between Stark's complaint for divorce and Dinarany's counterclaim for divorce, including spousal support, equitable distribution, and attorney's fees.

In the final divorce decree, the trial court noted that Stark provided for the family financially while Dinarany took care of the home and tended to the children. Moreover, Stark financed the down payment on the marital home with his separate property and made post-separation mortgage payments while Dinarany made "substantial nonmonetary contributions," such as finding the McLean home, working with the realtor to obtain the home, working with contractors to do kitchen and bathroom renovations, and generally maintaining the home. In consideration of its findings, the trial court ruled, "The McLean house shall be listed for sale and sold as expeditiously as possible[.]" The trial court ordered that the net proceeds would be divided such that Stark "shall receive the first payment of $9,067.52 for his sole payments of the principal of the mortgage from the date of separation (payment of July 31, 2019) to the date the home was placed in forbearance (on or about May 1, 2020)" and that Stark "shall receive a return of his separate property down payment towards the property," which the trial

- 6 -

court found "was properly traced in Husband's presentation of evidence as his separate property, in the amount of $175,737.44." The trial court further ruled that any "remaining proceeds, *after the above payments to Husband*, shall be divided equally (50/50) between the parties." (Emphasis added). Finally, the trial court ruled, "If the forbearance agreement requires that the forbearance mortgage amounts be paid before, during, or after the closing of this property, the Wife and Husband shall be equally responsible for making these payments."

With respect to the distribution of Stark's Army retirement pension, the trial court found, "There was no evidence presented as to the marital portion of Husband's pension, or if any portion of this asset is marital property." Consequently, the trial court ruled, "Aside from the TSP distribution above, the parties shall keep any and all retirement, pension, IRA or other funds/benefits currently held in their name, as their sole and separate property, with no contribution from the other party."

As for spousal support, the trial court made findings of fact on each of the statutory factors and ordered Stark to pay spousal support to Dinarany in the amount of $3,500 per month for a period of four years.

Finally, the trial court "considered the issue of attorney's fees under advisement after conclusion of the arguments on the awarding of fees." The court then ruled, "Upon consideration of the evidence and arguments presented, the Court finds that it is proper to award attorney's fees to the Husband and orders the Wife to reimburse the Husband a total of $17,360.55 of his attorneys' fees incurred in this case." However, the trial court specifically ordered that some of the attorney's fees would be apportioned between Dinarany and her counsel for the discovery violations caused by counsel and for "needlessly increas[ing] the cost of litigation." Both Stark and Dinarany appealed different aspects of the trial court's decision.

## II. ANALYSIS

### A. Stark's Assignment of Error 1 Regarding the Parties' Agreements

Stark's first assignment of error is that "[t]he trial court erred by including the parties' post-nuptial agreement into evidence, because it was not timely produced in discovery, and it was not effectuated as required by Paragraph 12 of the premarital agreement, because it was not registered in the county of residence of the Husband."

"The determination of whether to admit evidence 'rests within the sound discretion of the circuit court and will only be disturbed on appeal upon a showing of an abuse of discretion.'" Lee v. Spoden, 290 Va. 235, 251 (2015) (quoting Gamache v. Allen, 268 Va. 222, 228 (2004)). Moreover, Rule 4:12(b) provides, "If a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just[.]" The Supreme Court has made clear that "[a] trial court generally exercises 'broad discretion' in determining the appropriate sanction for failure to comply with an order relating to discovery." Walsh v. Bennett, 260 Va. 171, 175 (2000) (quoting Woodbury v. Courtney, 239 Va. 651, 654 (1990)). "Because the trial court 'exercises broad discretion in determining the appropriate sanction,'" this Court reviews its decision for an abuse of discretion. Galloway v. County of Northampton, 299 Va. 558, 563 (2021) (quoting Landrum v. Chippenham & Johnston-Willis Hosps., Inc., 282 Va. 346, 352 (2011)). "When we say that a circuit court has discretion, we mean that 'the [circuit] court has a range of choice, and that its decision will not be disturbed as long as it stays within that range and is not influenced by any mistake of law.'" Galiotos v. Galiotos, 300 Va. 1, 10 (2021) (alteration in original) (quoting Landrum, 282 Va. at 352). "Thus, only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Id. at 11 (quoting Sauder v. Ferguson, 289 Va. 449, 459 (2015)).

The trial court found that Dinarany's counsel failed to provide Stark and his attorney with a copy of the postnuptial agreement until October 21, 2020, after the discovery deadline set by the scheduling order had passed. Stark thus contends that the trial court should have excluded the postnuptial agreement from evidence because it "was not timely produced in discovery[.]" He therefore argues on appeal that "[t]his case should be remanded to the trial court with instructions to enforce the parties' premarital agreement."

However, although the prenuptial agreement contained a specific paragraph governing judicial proceedings in the event of divorce, Stark's complaint for divorce made no mention of the prenuptial agreement or its provisions for the dissolution of the marriage. As the Supreme Court of Virginia has repeatedly stated, "It is firmly established that no court can base its judgment or decree upon facts not alleged or upon a right which has not been pleaded and claimed." Ted Lansing Supply Co. v. Royal Aluminum & Const. Corp., 221 Va. 1139, 1141 (1981); see also Potts v. Mathieson Alkali Works, 165 Va. 196, 207 (1935) ("No court can base its decree upon facts not alleged, nor render its judgment upon a right, *however meritorious*, which has not been pleaded and claimed." (emphasis added)). "Under Virginia's notice pleading regime, '[e]very pleading shall state the facts on which the party relies in numbered paragraphs, and it shall be sufficient if it clearly informs the opposite party of the true nature of the claim or defense.'" Allison v. Brown, 293 Va. 617, 624 (2017) (quoting Rule 1:4(d)) (alteration in original). Explained more thoroughly by the Supreme Court,

> The basis of every right of recovery under our system of jurisprudence is a pleading setting forth facts warranting the granting of the relief sought. . . . Pleadings are as essential as proof, the one being unavailing without the other. A decree cannot be entered in the absence of pleadings upon which to found the same, and if so entered it is void.

Ted Lansing, 221 Va. at 1141. Thus, "[t]he issues in a case are made by the pleadings, and not by the testimony of witnesses or other evidence." Id. Because the issues in a case are made by

- 9 -

the pleadings, it follows that, as the Supreme Court has also stated, a "[d]efendant is supposed to know the plaintiff's grievances *only from his statement of them in the pleadings*." Lee v. Lambert, 200 Va. 799, 802 (1959) (emphasis added) (quoting Bank of Giles Cnty. v. Mason, 199 Va. 176, 180 (1957)).

Here, despite the absence of even a passing reference to the prenuptial agreement in the complaint, Stark's counsel stated during her opening statements at trial that it governs this case and also stated that "[t]he biggest issue in this case is going to be the prenup and the postnup," that "we are moving forward in this case saying that the prenup controls the division of the property," and that "[s]ince the prenup does control the division of the property, it seems pretty easy how we're going to divide things." Stark's counsel also said, "In the prenuptial agreement, both parties have waived spousal support[,] [s]o we don't have any spousal support issues in this case."

The first time Stark identified the prenuptial agreement was during discovery – in his answers to defendant's interrogatories. However, the answers that Stark provided in response to Dinarany's interrogatories during discovery do not constitute a *pleading* asserting a contractual right. Stark's argument at trial (and now before this Court) turns on the enforceability of the prenuptial agreement – as illustrated by the fact that Stark's counsel opened by stating that "the biggest issue in this case is going to be the prenup and the postnup." Moreover, in Dinarany's counterclaim for divorce, she asserted several additional claims for relief that contravene the express provisions of the prenuptial agreement, including a claim for spousal support and a claim to a portion of Stark's retirement pension, but Stark did not file an answer or responsive pleading raising a defense to Dinarany's claims based on the prenuptial agreement's governing those claims. In addition, Stark did not seek to amend his own complaint for divorce where he never mentioned the prenuptial agreement. The Supreme Court has made clear that "[e]very litigant is

- 10 -

entitled to be told by his adversary in plain and explicit language what is his ground of complaint *or defense*." Ted Lansing, 221 Va. at 1141 (emphasis added) (quoting Potts, 165 Va. at 207); see also Blizzard v. Salyer, 125 Va. 604, 610 (1919) (holding that "if the appellants were entitled to the protection of the registry statute aforesaid, that was a matter of defense to the benefit of which they could entitle themselves *only by affirmative pleading, setting up such defense* and by proof sustaining such pleading" (emphasis added)). Thus, when the true nature of a litigant's defense is a contractual right, well-settled Virginia law requires that such a defense be stated plainly and explicitly in a valid pleading. See Blizzard, 125 Va. at 610. However, Stark did not state "in plain and explicit language" a defense to Dinarany's counterclaim based on the prenuptial agreement. See Ted Lansing, 221 Va. at 1141. In fact, he did not even file any answer to Dinarany's counterclaim, or as noted *supra*, ever amend his own complaint for divorce.

In addition, the record shows that Stark did not object to the inclusion of the postnuptial agreement in evidence. In fact, Stark is the party who moved to admit the postnuptial agreement in evidence at trial. Stark asked the trial court to accept *both* the prenuptial agreement and the postnuptial agreement as Plaintiff's Exhibit 3. When counsel for Stark did so, the trial judge said, "Well, just by admitting it, I'm not saying that I'm going to enforce it. Obviously, you two are . . . disputing as to whether it is enforceable or not. . . . I need to review both agreements plus all the evidence to determine whether it is enforceable[.]" Stark's counsel subsequently reiterated, "I don't have a problem with that coming in," and repeated shortly thereafter, "Again, we don't have a problem with it coming in." As the Supreme Court has repeatedly admonished, "It is improper for a litigant to invite error and take advantage of the situation created by her own wrong." Matthews v. Matthews, 277 Va. 522, 528 (2009); see also Rowe v. Commonwealth,

- 11 -

277 Va. 495, 501-02 (2009) (declining to reach the merits of an assignment of error on appeal to the Supreme Court "because Rowe invited the very error of which he now complains").

Considering Stark's first assignment of error against this backdrop, we cannot say that the trial court erred by admitting the postnuptial agreement in evidence. Because Stark never raised the prenuptial agreement in his complaint for divorce or amended his complaint to claim the prenuptial agreement governed these issues – or even filed an answer to Dinarany's counterclaim raising it, Supreme Court case law is clear that Stark cannot now rely on the prenuptial agreement to prevail on these issues. Therefore, we do not reach Stark's argument that the prenuptial agreement was effective – and controlled the equitable distribution and spousal support questions before the trial court. Furthermore, Stark asked the circuit court at trial to admit the postnuptial agreement – and told the trial judge on more than one occasion at trial that he had no problem with its being admitted. Stark cannot now on appeal attempt to benefit by claiming as error that which he asked the trial court to do. Consequently, for all of these reasons, we cannot say that the trial court erred by including the parties' postnuptial agreement in evidence, and we do not overturn the trial court's decision on Stark's first assignment of error.

### B.  Equitable Distribution

Both Stark and Dinarany assign error to the trial court's distribution of the marital property. "In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Wright v. Wright, 61 Va. App. 432, 449-50 (2013) (quoting Klein v. Klein, 11 Va. App. 155, 161 (1990)). "Accordingly, 'decisions concerning equitable distribution rest within the sound discretion of the trial court[.]'" Id. at 450 (quoting McDavid v. McDavid, 19 Va. App. 406, 407-08 (1994)). The circuit court's "discretion is limited only in that the circuit court must consider all of the factors

in Code § 20-107.3(E)." Fadness v. Fadness, 52 Va. App. 833, 842 (2008). "If the circuit court considers all the factors and bases its findings on credible evidence, we will not disturb its decision on appeal." Id.

1. Stark's Appeal (Stark's Assignment of Error 4)

Stark contends that "[t]he trial court erred in ruling that the forbearance amount owed on the Virginia marital residence shall be split evenly between the parties." He submits that because Dinarany "had use of the entire home" during their separation, she "should have been responsible for half of the mortgage as one of two joint owners of the home, and for the other half of the mortgage as compensation for exclusive use of the husband's half of the property."

In fashioning its equitable distribution order, the trial court considered both Stark's monetary contributions and Dinarany's non-monetary contributions to the well-being of the family, noting that Stark largely provided for the family financially while Dinarany largely took care of the home and tended to the children. See Code § 20-107.3(E)(1). The trial court further found that Stark financed the down payment on the McLean home with his separate property – and that he made post-separation mortgage payments from his separate property until the home was placed in mortgage forbearance. See Code § 20-107.3(E)(2). However, the trial court also found that Dinarany "made substantial nonmonetary contributions to the acquisition and care and maintenance" of the marital property. For example, she found the marital home, worked with the realtor to obtain the home, and worked with contractors on kitchen and bathroom renovations at the home. Id. After laying out its findings of fact on each of the statutory factors, the trial court ordered that the McLean home "shall be listed for sale and sold as expeditiously as possible." The trial court specifically ordered that the net proceeds from the sale would be divided so as to credit Stark for his sole payments toward the mortgage principal from the time of separation until the time of mortgage forbearance and to reimburse Stark for his down payment on the home

- 13 -

using his separate property to do so. Once Stark is reimbursed for those contributions, the remaining proceeds must be split equally between the parties. Consequently, the trial court reasoned that "[i]f the forbearance agreement requires that the forbearance mortgage amounts be paid before, during, or after the closing of this property, the Wife and Husband shall be equally responsible for making these payments."

In short, even though Dinarany may have had exclusive use of the McLean home during the period of separation, Stark was credited both for his post-separation mortgage payments and for the use of his separate property for the down payment for the purchase of the home, and the trial court's equitable distribution of the McLean home was based on its consideration of each of the statutory equitable distribution factors under Code § 20-107.3(E). Under these circumstances, we cannot say that the trial court abused its discretion by concluding that any liability for the forbearance should be split evenly between the parties – just as the net proceeds would be split evenly after crediting Stark for several months of post-separation mortgage payments and for his separate-property down payment. Because the trial court "consider[ed] all the factors and base[d] its findings on credible evidence, we will not disturb its decision on appeal." Fadness, 52 Va. App. at 842.

- 14 -

2. <u>Dinarany's Appeal</u> (Dinarany's Assignments of Error 5 and 6)[2]

In her fifth and sixth assignments of error, Dinarany contends that the circuit court "erred in not awarding the Wife's share of a marital portion of the Husband's US Army retirement pension plan" and "erred in the marital share of the Husband's Thrift Savings Plan (TSP)[.]"

In its final order, the trial court found, "There was no evidence presented as to the marital portion of Husband's pension, or if any portion of this asset is marital property." Therefore, the trial court ruled, "Aside from the TSP distribution above, the parties shall keep any and all retirement, pension, IRA or other funds/benefits currently held in their name, as their sole and separate property, with no contribution from the other party." Dinarany contends on appeal that the trial court erred in concluding it could not determine the marital portion of Stark's Army retirement from the evidence in the record at trial. We agree.

The record in this case conclusively established that Stark and Dinarany were married in December 2012, while Stark served in the military, and that Stark retired from the Army during the marriage in late 2016. Neither the date of the marriage nor the date of Stark's retirement from the Army were disputed in this case. Stark's answers to the interrogatories from Dinarany also included the following statement: "My earning capacity is higher than Firouzeh's due to my work history. I served over 25 ½ years as an Army officer, only the last four of which were

---

[2] Dinarany's third and fourth assignments of error challenge equitable distribution, but she states on brief,

> Two issues for equitable distribution (Nos. 3 and 4) must be conceded because the Wife's previous counsel failed to present facts, documents and/or arguments as evidence during the trial. Therefore, a trial court's abuse of discretion cannot be found in these two equitable distribution issues because evidence was simply not presented at trial for the Court to consider.

Given Dinarany's explicit withdrawal of these assignments of error, we do not reach them on appeal.

served while married to her." Thus, Stark's own answer to an interrogatory that is in the record plainly demonstrates that Stark and Dinarany were married for approximately four years while Stark served in the military.

In equitable distribution matters, Code § 20-107.3(A) first requires the circuit court to classify property as marital, separate, or hybrid (*i.e.*, part marital and part separate). "Where property is classified by the trial court as 'part marital property and part separate property,' the trial court must determine the marital share of such property." Starr v. Starr, 70 Va. App. 486, 488 (2019) (quoting Code § 20-107.3(A)(3)). In turn, Code § 20-107.3(G)(1) defines the "marital share" of a retirement interest as "that portion of the total interest, the right to which was earned during the marriage and before the last separation of the parties, if at such time or thereafter at least one of the parties intended that the separation be permanent."

> Under Virginia law, it is well established that the marital portion of a defined benefit plan is distinguished from the separate portion by the application of a fraction, the numerator of which represents the total time the pensioner is employed during the parties' marriage, and the denominator of which represents the total time the pensioner is employed through the date of retirement.

Starr, 70 Va. App. at 492 (quoting Mann v. Mann, 22 Va. App. 459, 464 (1996)). Thus, "a trial court in Virginia determines the marital share of military retirement by applying the marital-share fraction." Id. at 496.

Because the record in this case clearly establishes that the marriage between Stark and Dinarany overlapped with Stark's military service for approximately four years, the trial court clearly erred in finding "[t]here was no evidence presented as to the marital portion of Husband's pension, *or if any portion of this asset is marital property*." (Emphasis added). In short, the record in this case compels us to conclude that the circuit court was plainly wrong in finding that there was not enough evidence before it to determine whether "any portion" of Stark's Army pension is marital property because the circuit court had all of the information necessary to apply

the marital-share fraction.  See Starr, 70 Va. App. at 496; Code § 20-107.3(G).  Therefore, we

reverse the circuit court's decision and remand for it to calculate the marital portion of Stark's

Army retirement pension in accordance with the martial-share fraction established by Virginia

law.  See id.[3]  After determining the marital share, the trial court should then make an equitable

distribution of the marital share between the husband and the wife – with the wife receiving up to

but not more than 50% of the marital share of the husband's Army pension.  See Code

§ 20-107.3(G)(1).

### C.  Spousal Support

Stark next argues in his Assignments of Error 2 and 3 that the trial court abused its

discretion by awarding spousal support to Dinarany because Dinarany failed to meet her burden

of proving a need for spousal support.  He also argues that the amount and length of duration of

the award constituted an abuse of discretion.  In Dinarany's appeal, she assigns error to the trial

court's decisions related to spousal support in Assignments of Error 1, 2, and 7.  Dinarany also

argues that the spousal support was wrongly computed – but as too little and not long enough in

duration.  She also maintains that the trial court erred by erroneously imputing income to her

after finding that she was voluntarily unemployed.

However, in determining whether to make an award of spousal support and in calculating

the amount and duration of the award, Code § 20-107.1(E)(8) requires the circuit court to

consider "[t]he provisions made with regard to the marital property under [Code] § 20-107.3,"

the equitable distribution statute.  Because we here reverse in part the trial court's award of

---

[3] In support of her assignment of error challenging the valuation of Stark's Thrift Savings Plan (TSP), Dinarany offers no argument on brief about what the correct valuation of Stark's TSP would have yielded.  At oral argument before this Court, when asked specifically about her assignment of error related to Stark's TSP, counsel for Dinarany stated, "Our assignment of error on the retirement is confined to the U.S. Army retirement pension plan."  Thus, this Court does not reach Dinarany's sixth assignment of error as it is now waived.  See Rule 5A:20(e).

equitable distribution, our case law is clear that, on remand, the trial court will also have to thoroughly reassess its spousal support award and duration. See, e.g., Robinson v. Robinson, 46 Va. App. 652, 671 (2005) (*en banc*); see also Dixon v. Dixon, 71 Va. App. 709, 722 (2020). Therefore, we do not reach either party's assignments of error dealing with whether the trial court correctly decided spousal support and the duration of it because we hold that the trial court will have to reassess spousal support and its duration on remand anyway.

### D. Attorney's Fees

In her final assignment of error, Dinarany challenges the trial court's allocation of attorney's fees. Both parties also request appellate attorney's fees.

"[A]n award of attorney's fees and costs is a matter for the trial court's sound discretion after considering the circumstances and equities of the entire case." Jones v. Gates, 68 Va. App. 100, 105 (2017) (quoting Mayer v. Corso-Mayer, 62 Va. App. 713, 731 (2014)). "Such decision 'is reviewable on appeal only for an abuse of discretion.'" Id. (quoting Graves v. Graves, 4 Va. App. 326, 333 (1987)). "An abuse of discretion occurs 'only when reasonable jurists could not differ' as to the proper decision." Allen v. Allen, 66 Va. App. 586, 601 (2016) (quoting Brandau v. Brandau, 52 Va. App. 632, 641 (2008)). "Our use of this deferential standard of review 'rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie.'" Wynnycky v. Kozel, 71 Va. App. 177, 193 (2019) (quoting Hamad v. Hamad, 61 Va. App. 593, 607 (2013)).

Dinarany argues that the trial court "erred in apportioning attorney's fees awarded to the Husband between the Wife and her former counsel[.]" She claims that the apportionment of attorney's fees was "inconsistent with the findings of fact that the Wife's former counsel is responsible for needlessly incurring attorney's fees by his failure to produce the Wife's

- 18 -

discovery documents." She therefore argues that the trial court "erred in not ordering [her] former counsel to pay most of the attorney's fees awarded to the Husband[.]"

Rule 4:12(b) permits a court in which an action is pending to make such orders "as are just" with respect to the failure of a party to comply with a discovery order. Further, the rule explicitly provides that "the court must require the party failing to obey the order or the attorney advising him *or both* to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." As the Supreme Court has stated, "A trial court generally exercises 'broad discretion' in determining the appropriate sanction for failure to comply with an order relating to discovery." Walsh, 260 Va. at 175 (quoting Woodbury, 239 Va. at 654). In sum, Rule 4:12 provides that it is within the trial court's range of choice to apportion attorney's fees between "the party failing to obey the order or the attorney advising him *or both*" as a sanction, and the trial court here stayed within its appropriate range of choice by concluding that the unique circumstances of this case justified apportioning attorney's fees between Dinarany and her trial counsel. The trial court's discretionary decision to apportion attorney's fees between Dinarany and her counsel (after taking the issue of attorney's fees under advisement) is certainly not outside the discretion due a trial judge, given "the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." Wynnycky, 71 Va. App. at 193 (quoting Hamad, 61 Va. App. at 607). Although the trial court acknowledged that Dinarany's counsel significantly contributed to the discovery violations in this case, we simply cannot say that "'reasonable jurists could not differ' as to the proper decision" regarding the apportionment of attorney's fees between Dinarany and her trial counsel in this case. Allen, 66 Va. App. at 601 (quoting Brandau, 52 Va. App. at 641). We therefore do

not disturb the trial court's judgment on appeal, and, accordingly, we affirm the trial court on Dinarany's ninth assignment of error.

Finally, both parties request attorney's fees incurred in these appeals. This Court has discretion to grant or deny attorney's fees incurred on appeal. See Rule 5A:30(b); see also O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695 (1996). In making such a determination, the Court considers all the equities of the case. Rule 5A:30(b)(3). After considering the record before us and all the equities of the case, we deny both parties' requests for appellate attorney's fees. Dinarany prevails on several of the issues presented by these companion appeals, Stark prevails on others, and the arguments presented on most of the assignments of error are certainly not frivolous. In short, in exercising our discretion to determine whether to award appellate attorney's fees, we do not believe that the equities of this case justify such an award to either party. Consequently, we deny both parties' requests for appellate attorney's fees.

### III. CONCLUSION

In short, for the foregoing reasons, we do not disturb the trial court's decision to include the parties' postnuptial agreement in evidence. Neither do we find that the trial court erred in requiring the parties to share equally in the payments required by the mortgage forbearance on the marital home. In addition, we find that the trial court did not abuse its discretion in its apportionment of the attorney's fees awarded to Stark between Dinarany and her trial counsel. However, the circuit court was plainly wrong in concluding that it could not determine the marital portion of Stark's Army retirement pension from the record, because the circuit court had enough information in the record here to determine the marital-share fraction established by Virginia law. Therefore, on remand, the circuit court should determine the marital share of Stark's Army pension and then decide whether to award Dinarany a portion (but not more than 50%) of that marital share of Stark's Army pension. Furthermore, because we are reversing the

circuit court on one of its decisions regarding equitable distribution and remanding this case for reconsideration of that decision consistent with this opinion, Virginia law requires that the trial court must also reassess its award of spousal support upon remand. Therefore, we do not decide whether the trial court correctly decided spousal support (and the duration of it) because it will have to reassess its decision on spousal support on remand anyway. For all of these reasons, the judgment of the circuit court is therefore affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

<u>Affirmed in part, reversed in part, and remanded.</u>